STATE OF NORTH CAROLINA v. CHARLES WAYNE MUNSEY

No. 417A95

(Filed 8 March 1996)

**Evidence and Witnesses § 1256 (NCI4th)— Miranda warnings—request for counsel—subsequent incriminating statements—conversation not initiated by defendant**

The trial court properly suppressed incriminating statements made by defendant on 11 June 1993 on the ground that defendant did not initiate the dialogue with officers after defendant requested an attorney where defendant was arrested and given the *Miranda* warnings; defendant told officers he would like to have a lawyer; an officer unsuccessfully attempted to contact an attorney requested by defendant; defendant then asked the officer to call his brother and said "that would do instead of" the attorney; defendant's brother was contacted and visited defendant in jail; defendant answered that he would talk with the sher-

iff and another officer when they asked him if he was then ready to talk with them; and defendant made the 11 June statements. Furthermore, the trial court also properly suppressed a statement made by defendant to two SBI agents on 16 June 1993 on the ground that defendant did not initiate the conversation with the SBI agents.

**Am Jur 2d, Criminal Law §§ 788 et seq.**

**Denial of, or interference with, accused's right to have attorney initially contact accused. 18 ALR4th 669.**

**What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.**

**What constitutes assertion of right to counsel following Miranda warnings—federal cases. 80 ALR Fed. 622.**

Appeal as of right pursuant to N.C.G.S. § 15A-1445(b) and § 15A-979(c) from an order entered by Rousseau, J., on 10 May 1995 in Superior Court, Wilkes County, suppressing statements made by the defendant to law enforcement officers. Heard in the Supreme Court 12 February 1996.

The defendant was charged with first-degree murder. He made a motion to suppress statements he made to law enforcement officers, and a hearing was held on his motion. The evidence at the hearing showed that on 11 June 1993, the defendant was arrested for a parole violation and taken to the sheriff's office. At approximately 5:50 p.m., the defendant was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). At that time, the defendant said, "I would like to have a lawyer."

At the defendant's request, Lieutenant Bobby Walsh of the Wilkes County Sheriff's Department called Dennis Joyce, an attorney, but was unable to reach him. When Lieutenant Walsh was unable to procure an attorney, the defendant asked him to call his brother and said "that would do instead of Mr. Joyce." Lieutenant Walsh called the defendant's brother, who went to the sheriff's office and conferred in private with the defendant "for approximately fifteen to twenty minutes."

Lieutenant Walsh testified that after the defendant's brother left, "I walked back in the office and Charles Munsey told me he would

now talk to me without a lawyer." Sheriff Dane Mastin testified to this occurrence as follows: .

> THE COURT: All right, after he talked with his brother, what did he say?

> A.   He was willing to talk to us, he was ready to talk to us.

> THE COURT: Did he say, "I'm willing to talk to you"?

> A.    He just indicated to us, we asked him if he was, as I recall, when we asked him if he was ready to talk to us now, he said, "Yes."

The defendant then made a statement to the law enforcement officers.

On 16 June 1993, two agents of the State Bureau of Investigation interviewed the defendant in the sheriff's office. They advised him of his rights pursuant to *Miranda,* and he agreed to talk to them. The defendant then made a statement to the SBI agents.

At the conclusion of the hearing, the court dictated an order in open court in which it concluded that the defendant did not initiate the conversation with the officers after his brother had left him on the night of 11 June 1993 and that the defendant did not intelligently and voluntarily waive his rights on that date. The court ordered the statement suppressed. As to the interrogation of 16 June 1993, the court concluded that the defendant did not initiate the conversation with the SBI agents and suppressed the statement made on that day.

The court then entered a written order in which it did not make a specific finding that the defendant did not initiate the dialogue with the officers on 11 June 1993, but concluded that the defendant "did not fully, voluntarily, and understandingly initiate his willingness to answer questions from the officers." The court ordered the statement of 11 June 1993 suppressed. The court also found in its written order that the defendant did not initiate the dialogue with the officers on 16 June 1993 and ordered the statement made on that date suppressed.

The State appealed.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State-appellant.*

*Bradley J. Cameron and John W. Gambill, for the defendant-appellee.*

STATE v. MUNSEY

[342 N.C. 882 (1996)]

WEBB, Justice.

This case brings to the Court questions as to the admissibility of two separate statements made by the defendant to law enforcement officers. On 11 June 1993, after the defendant had been arrested and warned of his rights pursuant to *Miranda,* he told the officers he would like to have a lawyer. When a person under arrest tells a law enforcement officer that he wants to have an attorney, any interrogation must stop, and the officers cannot again interrogate that person without an attorney being present unless the person under arrest initiates further dialogue with the officers. *Oregon v. Bradshaw,* 462 U.S. 1039, 77 L. Ed. 2d 405 (1983); *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378 (1981).

In this case, the court concluded in its order dictated in open court that the defendant did not initiate the dialogue with the officers on 11 June 1993. Although the court did not put this conclusion in its written order, it was a conclusion of the court, and we are bound by it if it was properly reached.

When a court conducts a hearing to determine the admissibility of evidence, it should make findings of fact that will support its conclusions as to whether the evidence is admissible. If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court. *State v. Penley,* 318 N.C. 30, 45-46, 347 S.E.2d 783, 792-93 (1986).

The court did not make a specific finding of fact in regard to the testimony by Lieutenant Walsh and Sheriff Mastin as to how the interrogation was resumed after the defendant's consultation with his brother. The court did say at the conclusion of the *voir dire* hearing, "[W]ell, there's no evidence before me that that [sic] after the brother left, that the Defendant said, without further questions, that, 'I'll talk.' " We believe this shows the court concluded, and we agree, that there was no conflict in the evidence on this point. Sheriff Mastin and Lieutenant Walsh both testified that defendant said he would talk to them, but Sheriff Mastin explained that the defendant said this after they asked him whether he would talk to them. This shows the defendant did not initiate the dialogue. It was not necessary for the court to make a finding of fact on this uncontradicted evidence in order to conclude that the defendant did not initiate the dialogue. *State v. Riddick,* 291 N.C. 399, 408, 230 S.E.2d 506, 512 (1976).

We hold that the superior court was not in error in excluding the defendant's statement made on 11 June 1993.

As to the statement of 16 June 1993, the court found as a fact that the two SBI agents went to the sheriff's office on that date and interviewed the defendant, who was incarcerated. The court concluded the defendant did not initiate this dialogue and excluded the defendant's statement. In this we find no error. The court's finding is supported by competent evidence and in turn supports the conclusion of law that the defendant's statement was obtained in violation of his constitutional rights.

AFFIRMED.