STATE OF NORTH CAROLINA v. ALFRED MANGA BELL

No. COA11-864

(Filed 17 July 2012)

**1. Search and Seizure—consent—voluntary—motion to suppress—properly denied**

The trial court did not err in a first-degree burglary, robbery with a dangerous weapon, first-degree sexual offense, first-degree kidnapping, and second-degree kidnapping of a person under the age of 16 case by denying defendant's motion to suppress evidence obtained as a result of a search of his apartment. As there was no dispute in the evidence regarding voluntariness, it can be inferred that the trial court found the consent to be voluntary from its conclusion that defendant gave valid oral consent.

**2. Appeal and Error—preservation of issues—argument not presented at trial—plain error not argued**

Defendant failed to preserve for appellate review his argument that the trial court erred in a first-degree burglary, robbery with a dangerous weapon, first-degree sexual offense, first-degree kidnapping, and second-degree kidnapping of a person under the age of 16 case by denying his motion to suppress evidence obtained as a result of a search of his apartment because the search of the room did not exceed any consent given. Defendant failed to make this constitutional argument at trial and did not argue plain error on appeal.

**3. Kidnapping—first-degree—additional confinement—after robbery and sex offenses—sufficient evidence—separate offenses**

The trial court did not err in a first-degree burglary, robbery with a dangerous weapon, first-degree sexual offense, first-degree kidnapping, and second-degree kidnapping of a person under the age of 16 case by denying defendant's motion to dismiss the charges of first-degree kidnapping. The additional confinement of the two female victims at the end of the invasion, after the robbery and sex offenses were finished, was sufficient evidence of kidnapping separate from the other offenses.

**4. Kidnapping—person under age of 16—sufficient evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree kidnapping of a person under the age of 16 as there was sufficient evidence that defendant confined the victim's son.

Appeal by defendant from judgments entered 24 February 2011 by Judge George W. Abernathy in Person County Superior Court. Heard in the Court of Appeals 11 January 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.*

*W. Michael Spivey for defendant-appellant.*

GEER, Judge.

Defendant Alfred Manga Bell appeals from the judgments entered on his conviction of three counts of second degree kidnapping, two counts of robbery with a dangerous weapon, four counts of first

**STATE v. BELL**

[221 N.C. App. 535 (2012)]

degree sexual offense, and one count of first degree burglary. Defendant primarily contends on appeal that the trial court improperly denied his motion to suppress evidence obtained as a result of a search of his apartment. Although the trial court found that defendant consented to the search, defendant contends the trial court erred in failing to find that the consent was voluntary. Because defendant contended at trial that he did not consent at all and did not argue that any consent was involuntary, the trial court's order, including its determination that defendant gave "valid" consent was adequate.

## Facts

The State's evidence tended to show the following facts. On the night of 4 September 2010, Stacey Thornburg was living with her son and her mother, Sandra Johnson, in a single family home in Person County, North Carolina. That evening, Ms. Thornburg went to her bedroom, leaving her son watching television. Sometime after going to sleep, Ms. Thornburg was awakened by a noise in the house. She got out of bed and started down the hallway when she saw a man dressed all in black come out of the laundry room holding a gun. The man was wearing a black mask and gloves and a black waist-length leather jacket. The gloves had some sort of white markings on them.

When Ms. Thornburg saw the intruder, she screamed. The intruder told her to quit screaming, or he would hurt her family. After she stopped, the intruder led her down the hall to the living room where her son, who had fallen asleep on the couch, asked what was happening. The intruder, speaking with an African or Jamaican accent, told Ms. Thornburg to put her son in his room. Ms. Thornburg told her son to go to his room, and he did.

The intruder asked if Ms. Thornburg had any money in the house. She said she had just a few dollars in her purse. The intruder then asked if there was anyone else in the home, and Ms. Thornburg admitted that her mother was there. When the intruder asked if Ms. Thornburg's mother had any money, she told him that she likely did not. The intruder still directed Ms. Thornburg to go to her mother's bedroom. After Ms. Thornburg's mother, Ms. Johnson, opened the door to her bedroom, the intruder entered the room, and she gave him a diamond ring that he put into his pocket.

The intruder asked the two women if they had a camera. After Ms. Thornburg brought the intruder the camera, he told the two women to sit on the edge of the bed and disrobe. The intruder then demanded that Ms. Thornburg insert her fingers in Ms. Johnson's

vagina and perform cunnilingus on her—afterwards, he forced Ms. Johnson to do the same to Ms. Thornburg. The intruder used the camera to photograph the women during the sexual acts. The intruder also penetrated both women with his fingers. Ms. Thornburg noticed that he appeared to have on latex gloves instead of the black gloves she had first seen.

While the women were in Ms. Johnson's bedroom, Ms. Thornburg's son began to cry out. Ms. Thornburg called to him every three minutes to tell him that everything was going to be okay and to stay in his room. At one point, defendant told the women that if they went to the police, he would publish the pictures he had taken of them. He claimed that if they did not call the police, he would return the camera to them in a month.

Towards the end of the invasion, the intruder claimed that he had acted as he had because he had lost his job, he needed money for rent, his wife had left him, he was going to lose his home, and he had a son Ms. Thornburg's son's age. The intruder then grilled Ms. Johnson about Bible verses and made the two women stand and pray with him. After praying, the intruder told Ms. Thornburg to take the gun from him and to hold it so that he could see if he could trust her and her mother. After she held the gun, he took it back from her. He also returned the diamond ring Ms. Johnson had given him. The intruder then told the women that they could go to Ms. Thornburg's son's room. After giving Ms. Thornburg a hug, the intruder left the house.

After the women had assured Ms. Thornburg's son that everything would be okay, Ms. Johnson called the police. The police arrived within minutes at around 6:30 or 7:00 a.m. Ms. Thornburg told them there had been a man who lived next door who was from Africa and had a son. When one of her neighbors, Donna Bruster, called to make sure that the family was okay, Ms. Thornburg asked her if she remembered the name of the man from Africa who had a son and lived next door. Ms. Bruster confirmed that he was called "Alfred," he had lived with their neighbors for some months because he had separated from his wife, and he had a son.

Ms. Thornburg gave a description of the intruder and of what he was wearing to the officers. The Sheriff of Person County, Dewey Jones, was one of the officers who responded to Ms. Johnson's call. Ms. Bruster met Sheriff Jones in the yard and told him that she and Ms. Thornburg thought that the intruder could be a man who used to

**STATE v. BELL**

[221 N.C. App. 535 (2012)]

live next door with other neighbors. She told the Sheriff that the man's name was "Alfred" and that he spoke with an African or Jamaican accent like the one Ms. Thornburg had described.

From that information, the Sheriff's Department determined that the man who had lived with the neighbors was defendant Alfred Manga Bell, and his current address was in Durham. Sheriff Jones and Investigator Ryan Weaver contacted the Durham Police Department and met three Durham officers near the address where defendant was living. Sheriff Jones, Investigator Weaver, and one of the Durham officers entered the address, a boarding house, at approximately 10:00 a.m. and found defendant in his room.

Sheriff Jones and Investigator Weaver asked for defendant's consent to search his room, and defendant agreed. Defendant stood in the hallway with some of the Durham officers and watched Sheriff Jones and Investigator Weaver conduct the search. In a dresser with partially opened drawers, Sheriff Jones found a silver camera of the type described as stolen by Ms. Thornburg. At approximately the same time, Investigator Weaver lifted the bed's mattress and found two black gloves with white markings similar to those described by both Ms. Thornburg and Ms. Johnson. When the officers discovered those items, defendant revoked his consent to their search.

Sheriff Jones and Investigator Weaver immediately withdrew from the room and called the District Attorney's Office for advice. Based on that advice, Sheriff Jones and Investigator Weaver reentered the room and recovered the items they had found prior to defendant's revocation of his consent, including the black gloves, some latex gloves, and the camera. They did not, however, search any further. When the officers turned on the camera, it showed pictures of Ms. Thornburg and Ms. Johnson engaged in sexual acts.

Investigator Weaver then obtained a search warrant for defendant's room and car. In the room, officers found two leather jackets and a pair of boots with grass on the tops and soles. Having had defendant's car towed to the Person County impound lot, Investigator Weaver discovered what turned out to be a black BB gun that looked like a handgun in the glove box and latex gloves inside a hard hat in the trunk. Ms. Thornburg testified that the gun recovered by Investigator Weaver was similar to the one used by the intruder.

Defendant was indicted for first degree burglary, two counts of robbery with a dangerous weapon, four counts of first degree sexual offense, two counts of first degree kidnapping, and one count of sec-

ond degree kidnapping of a person under the age of 16. The jury convicted defendant of all the charges. The trial court arrested judgment on the two first degree kidnapping convictions and sentenced defendant for the lesser included offense of second degree kidnapping.

The trial court then sentenced defendant (1) to a presumptive-range term of 240 to 297 months imprisonment for the charge of first degree sex offense involving Sandra Johnson, (2) to a consecutive presumptive-range term of 240 to 297 months imprisonment for the charge of first degree sex offense involving Stacy Thornburg, (3) to a consecutive presumptive-range term of 24 to 38 months imprisonment for the second degree kidnapping of Ms. Thornburg's son, (4) to two concurrent presumptive-range terms of 24 to 38 months imprisonment for the second degree kidnapping of Ms. Johnson and Ms. Thornburg, (5) to a single concurrent presumptive-range term of 59 to 80 months imprisonment for the two counts of robbery with a dangerous weapon, and (6) to a concurrent presumptive-range term of 240 to 297 months imprisonment for the consolidated charges of first degree burglary and two counts of first degree sex offense. Defendant timely appealed to this Court.

I

**[1]** Defendant first contends that the trial court improperly denied his motion to suppress because defendant did not voluntarily consent to the search of his room and, in any event, the search of the room exceeded any consent given. Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

In denying defendant's motion to suppress, the trial court made the following relevant findings of fact:

6. The defendant answered the door of his room and had conversation with Sheriff Jones, Sergeant Weaver and at least one Durham officer.

7. The defendant gave oral consent to Sheriff Jones and Sergeant Weaver to search his room, which consent was overheard by a Durham officer.

8. Upon the discovery by Sheriff Jones and Sergeant Weaver of items which were construed by them to be evidence of the crimes they were investigating, the defendant revoked his consent to the search of his room.

9. Sheriff Jones and Sergeant Weaver ceased their search and withdrew from the room upon the defendant's revocation of his consent.

10. Review of the items already seized led Sheriff Jones and Sergeant Weaver to place the defendant under arrest.

11. Sergeant Weaver subsequently secured a search warrant for the room, using as part of his statement of probable cause the items seized pursuant to the brief consensual search.

Sheriff Jones' and Investigator Weaver's testimony was the basis for the court's findings. As those findings are supported by competent evidence, they are binding on appeal. *State v. Kuegel*, 195 N.C. App. 310, 315, 672 S.E.2d 97, 100 (2009).

Defendant argues, however, that the trial court erred in failing to make an explicit finding that defendant's consent to search his room was voluntarily given. While a search is reasonable under the Fourth Amendment "when lawful consent to the search is given," *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997), the State must still prove that any consent was "freely and intelligently given, without coercion, duress or fraud." *State v. Vestal*, 278 N.C. 561, 578–79, 180 S.E.2d 755, 767 (1971).

In support of his contention that the order was required to include an express finding regarding the voluntariness of his consent, defendant points to *State v. Smith*, 135 N.C. App. 377, 520 S.E.2d 310 (1999). In *Smith*, a police officer testified at a hearing on a motion to suppress evidence found during a search of a hotel room that the defendant consented to the search, while the defendant testified that the officers had not asked for permission to search, and he had not given permission. *Id.* at 378-79, 520 S.E.2d at 311. In the trial court's ruling denying the motion to suppress, the court did not resolve that dispute in the evidence regarding consent, stating only that it had some doubts regarding the truthfulness of both the officer and the defendant. *Id.* at 379-80, 520 S.E.2d at 311-12.

In reversing, this Court held that while a failure to find a fact is not error when there is no conflict in the evidence, the State's evidence and the defendant's evidence had been in conflict over whether the defendant had consented. *Id.* at 380, 520 S.E.2d at 312. The Court held that remand for further findings was necessary because "[t]he trial court's findings did not include a specific finding as to whether defendant voluntarily consented to the search of room 224 of the Kinston Motor Lodge." *Id.*

While defendant reads this last quotation as requiring an express finding of voluntariness, it is important to note that the voluntariness of any consent was not an issue in *Smith*. This Court specifically observed that "[n]o evidence was presented to suggest coercion or intimidation by the detectives in obtaining defendant's consent to search." *Id.* We do not read *Smith* as holding that findings regarding voluntariness must be made even when there is no conflict in the evidence regarding whether any consent—if given—was voluntary. Indeed, any such holding in *Smith* would be dicta and not controlling since the issue of voluntariness was necessary to the decision in *Smith*.

If the trial court in *Smith* had actually made a finding that the defendant, in that case, consented to the search, then *Smith* would be indistinguishable from this case. However, according to the *Smith* opinion, the only finding made by the trial court on the issue of consent was: " 'Officer Harrell testified that he informed the defendant as to the reason for the presence of the officers, asked for permission to search the room, and testified that the defendant gave permission to search.' " *Id.* at 379, 520 S.E.2d at 311 (quoting trial court's findings of fact). The Court further noted that "[w]hile the trial court stated it had 'some serious questions with the truthfulness' of both Detective Harrell and defendant, the trial court found there was sufficient evidence to deny defendant's motion to suppress." *Id.*

In other words, the trial court recited the officer's testimony regarding consent, found that the officer's truthfulness was in doubt (as well as the defendant's), and then denied the motion to suppress without ever resolving the dispute between the witnesses on the issue of consent. It is well established that a finding reciting a witness' testimony is not adequate to resolve a conflict in the testimony. *See State v. Lang*, 309 N.C. 512, 520, 308 S.E.2d 317, 321 (1983) ("Certain of the findings in the order denying suppression are more correctly described as recitations of testimony presented at the hearing. They do not resolve conflicts in the evidence but are merely statements of

what a particular witness said. Although such recitations of testimony may properly be included in an order denying suppression, they cannot substitute for findings of fact resolving material conflicts.").

It was the duty of the trial court in *Smith* to resolve the conflict in the testimony and not just to describe the testimony. *See State v. Neal*, 210 N.C. App. 645, 653, 709 S.E.2d 463, 468 (2011) (reversing denial of motion to suppress and remanding for entry of written order and findings of fact when trial court acknowledged conflict arising from officer's and defendant's testimony but nonetheless denied motion to suppress because " 'there is insufficient evidence' " for court to resolve the conflict). Consequently, this Court, in *Smith*, reversed and remanded for reconsideration and further findings of fact. 135 N.C. App. at 380, 520 S.E.2d at 312.

In this case, Sheriff Jones and Investigator Weaver testified that they asked defendant for consent to search his room, and he gave it. On the other hand, defendant testified that when he opened the door of his room, the officers, after asking if they could speak with him, pushed past him and announced they wanted to search his room. Defendant further testified that he demanded their search warrant and never gave consent. Thus, there was a conflict in the evidence as to whether or not defendant consented at all to the search. There was no conflict as to whether defendant's consent was voluntary. The trial court, in its order, made a specific finding of fact resolving the conflict in the evidence: "The defendant gave oral consent to Sheriff Jones and Sergeant Weaver to search his room, which consent was overheard by a Durham officer."

The trial court's failure in *Smith* to make a finding expressly resolving the question whether the defendant consented to the search is a material distinction from this case. In *Smith*, the case was being remanded in any event, and, on remand, the defendant could choose, in contrast to the first trial, to also argue the voluntariness of any consent. Here, defendant's position would give him two bites at the apple. Although defendant apparently chose not to argue voluntariness before the trial court, he asks this Court to reverse and remand to give him a chance to do so now that it has been established that defendant consented.

This approach is contrary to our rules regarding preservation of issues for appeal. *See State v. Lloyd*, 354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."); *see also*

N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, *stating the specific grounds* for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." (emphasis added)).

In any event, the trial court in this case, after making findings of fact resolving the dispute whether consent was given, stated in its conclusion of law that "[t]he defendant gave Sheriff Jones and Sergeant Weaver valid oral consent to search his room." In order for the search to be "valid" under North Carolina law, defendant's consent must have been given voluntarily. *State v. Boyd*, 207 N.C. App. 632, 637, 701 S.E.2d 255, 258 (2010) ("In order for consent to be valid it must be 'voluntar[y]. To be voluntary the consent must be . . . "freely and intelligently given," . . . free from coercion, duress or fraud, and not given merely to avoid resistance.' " (quoting *State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967))). Because of the lack of any dispute in the evidence regarding voluntariness, we can infer that the trial court found the consent to be voluntary from its conclusion that defendant gave "valid oral consent." *See Smith*, 135 N.C. App. at 380, 520 S.E.2d at 312 (" 'If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court.' " (quoting *State v. Munsey*, 342 N.C. 882, 885, 467 S.E.2d 425, 427 (1996))).

[2] Defendant next argues that even if the trial court properly found he consented to the search, the officers' search exceeded the scope of the consent. However, after a review of defendant's motion to suppress and the transcript of the hearing, it appears that defendant also failed to make this constitutional argument to the trial court. Defendant's motion to suppress argues only that the "initial search of the Defendant's apartment was done without his consent." The supporting affidavit from his attorney states only that defendant "has informed me that he did not give Sheriff Dewey Jones or any other law enforcement officer permission to enter or search his apartment . . . ."

We have found no indication that defendant made any argument at the trial level that the search exceeded the scope of the consent. An argument that a search exceeds the consent given is substantively very different than an argument that no consent was given at all. It calls for very different evidence and findings of fact. We hold, there-

fore, that defendant did not preserve this specific constitutional argument for appellate review.

Although defendant asks this Court to conduct plain error review in the event that the Court determines that defendant's counsel did not object each time the State sought to admit the challenged evidence, defendant has not argued plain error with regard to this particular constitutional argument. As our Supreme Court very recently stressed: "To have an alleged error reviewed under the plain error standard, the defendant must *specifically and distinctly* contend that the alleged error constitutes plain error." *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (emphasis added) (internal quotation marks omitted). We, therefore, do not consider the merits of defendant's "scope of consent" argument.

II

**[3]** Defendant next contends that the trial court erred in denying defendant's motion to dismiss the charges of first degree kidnapping. Defendant argues that any confinement of Ms. Johnson and Ms. Thornburg was inherent in the armed robberies and sexual offenses and, therefore, could not be the basis for separate kidnapping convictions.

"Under N.C.G.S. § 14-39, a defendant commits the offense of kidnapping if he: (1) confines, restrains, or removes from one place to another; (2) a person; (3) without the person's consent; (4) for the purpose of facilitating the commission of a felony, doing serious bodily harm to the person, or terrorizing the person." *State v. Mann*, 355 N.C. 294, 302, 560 S.E.2d 776, 782 (2002). The Supreme Court has recognized that "this statute presents the potential for a defendant to be prosecuted twice for the same act." *State v. Boyce*, 361 N.C. 670, 672, 651 S.E.2d 879, 881 (2007). This potential exists because "certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim." *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

In *Fulcher*, *id.*, our Supreme Court held "that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." On the other hand, the Court reasoned that "there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes

the kidnapping, is a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352.

Therefore, in order to survive defendant's motion to dismiss, the State must have presented sufficient evidence to enable the jury to reasonably find that defendant committed a confinement, restraint, or removal of the victim that was "a separate, complete act, independent of and apart from the other felony." *Id.* In *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981), our Supreme Court further explained this separate restraint requirement, holding that the State could survive a motion to dismiss a kidnapping charge if the victim was "exposed to greater danger than that inherent in the armed robbery itself."

The jury was instructed in this case that in order to find defendant guilty of first degree kidnapping, they were required to find that defendant "confined the person for the purpose of facilitating the commission of a sexual assault or for the purpose of terrorizing a person." The key question with respect to defendant's motion to dismiss is, therefore, whether defendant confined the two women in an act separate from the confinement inherent in the armed robberies and sexual offenses. Confinement has been defined by our Supreme Court as involving "some form of imprisonment within a given area, such as a room, a house or a vehicle." *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351.

This Court applied this definition of confinement in *State v. Johnson*, 183 N.C. App. 576, 646 S.E.2d 123 (2007), when considering whether the confinement of the victim was sufficient to support both a charge of attempted first degree murder and kidnapping. The Court concluded that there was sufficient evidence of some form of imprisonment within a given area separate and apart from the attempted murder when the victim testified that although she asked the defend-ant to leave, he continued to block the only exit from the victim's apartment, and he ultimately closed and locked the door to the apartment, confining the victim inside, at which point he committed the attempted murder. *Id.* at 581, 646 S.E.2d at 126.

Here, the State alleged that defendant committed armed robbery of the camera. After Ms. Thornburg handed defendant the camera and after he stopped forcing the women to engage in the sexual acts, defendant continued to hold them at gunpoint while he talked to them about what had happened to him, grilled Ms. Johnson about Bible verses, and made them pray with him. Just as the initial con-

finement in *Johnson* before the attempted murder supported a separate kidnapping conviction, so too, in this case, the additional confinement at the end of the invasion, after the robbery and sex offenses were finished, is sufficient evidence of kidnapping separate from the other offenses.

Defendant, however, points to *State v. Cartwright*, 177 N.C. App. 531, 629 S.E.2d 318 (2006). In *Cartwright*, the defendant first demanded money from the victim in her kitchen and then moved her to the den of her home and raped her. Afterward, he again demanded money from the victim who walked down the hall to her bedroom and gave him a dollar, at which point the defendant left the house. *Id.* at 536-37, 629 S.E.2d at 323. In other words, the robbery was ongoing, beginning when the defendant first confronted the victim and continuing until the victim gave him the dollar at the end of the encounter. The State presented no evidence of confinement, restraint, or removal after the robbery and rape were complete.

In this case, in contrast to *Cartwright*, defendant did not leave the premises after the robbery and sexual offenses were concluded. Rather, he continued to hold the two women in the room at gunpoint for a period of time, engaging in acts wholly unrelated to the robbery and sexual offenses. The trial court, therefore, properly denied the motion to dismiss the kidnapping charges with respect to the two women.

III

[4] Finally, defendant contends that the trial court erred in denying his motion to dismiss the charge of second degree kidnapping of a person under the age of 16 because there was insufficient evidence that he confined Ms. Thornburg's son. When the victim is under 16, the elements of kidnapping under N.C. Gen. Stat. § 14-39(a) (2011) remain the same, but the State must prove, in addition, that the child's parent or legal guardian did not consent to the restraint, confinement, or removal. *State v. Hunter*, 299 N.C. 29, 40, 261 S.E.2d 189, 196 (1980).

Here, the State presented evidence that defendant, while threatening Ms. Thornburg and her son with a gun, told her to put her son in his room. Ms. Thornburg followed that order by directing her son to go to his bedroom. After that, whenever her son called out, Ms. Thornburg called back to keep him in his bedroom. In short, the boy was confined to his bedroom because defendant ordered it while, as the boy knew, holding the boy's mother at gunpoint. It is well established that "the use of fraud, threats or intimidation is equivalent to

the use of force or violence so far as a charge of kidnapping is concerned." *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351. The State, therefore, presented sufficient evidence of confinement to support the kidnapping charge with respect to Ms. Thornburg's son. As defendant makes no other argument in support of his motion to dismiss, we hold the trial court properly denied the motion.

No error.

Judges STEELMAN and ROBERT N. HUNTER, JR. concur.