IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-37

No. COA20-715

Filed 18 January 2022

Cleveland County, No. 18CRS053262

STATE OF NORTH CAROLINA

v.

REBECCA MICHELLE HEATH, Defendant.

Appeal by defendant from judgment entered on or about 6 September 2019 by Judge Daniel A. Kuehnert in Superior Court, Cleveland County. Heard in the Court of Appeals 8 June 2021.

*Attorney General Joshua H Stein, by Special Deputy Attorney General Alexander G. Walton, for the State.*

*Shawn R. Evans, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1      Defendant appeals the denial of her motion to suppress. Because the trial court failed to make sufficient findings of fact resolving conflicting evidence of material facts, we must vacate and remand for further findings of fact and the requisite conclusions of law.

## I.    Procedural Background

On 27 August 2018, defendant was indicted for possession of methamphetamine. On 1 August 2019, defendant filed a motion to suppress "any statements made by the Defendant as well as any controlled substances seized after an unconstitutional stop and delay pursuant to a search without a search warrant on or about June 4, 2018." Defendant argued, "there was no reasonable articulable suspicion or traffic violation warranting a stop of the vehicle, that the Defendant was asked to leave her vehicle without justification and that she was further detained without reasonable articulable suspicion that criminal activity was afoot[.]" Defendant filed an affidavit in support of her motion to suppress.

After a hearing on the motion to suppress on 1 August 2019, the trial court entered an order denying defendant's motion. The trial court found:

> 1. That on June 4, 2018, the defendant Rebecca Heath was stopped by Deputy Nathan Hester for driving left of center and driving without an active license.
>
> 2. That Deputy Hester had a connection with this individual from prior drug activity and recognized the vehicle she was driving as one owned by someone involved in drug activity.
>
> 3. That upon conducting [sic] the vehicle, he began to perform those standard vehicle checks involved with a traffic stop which included checking car registration, VIN, and license status of Heath.
>
> 4. That, as Deputy Hester was in an unmarked car and thus did not have the ability to run the defendant's information himself, the information had to be called in

and run through dispatch.

5.      That while that information was being run, *Deputy Hester asked the defendant for consent to search the vehicle which the defendant did not give.*

6.      That Deputy Hester then asked the defendant to get out of the vehicle and called for a canine officer to come to the scene.

7.      That the call to the canine officer for a sniff came approximately four minutes after the defendant's vehicle was stopped by Deputy Hester.

8.      That within four minutes of being called to the scene, Canine Officer Chris Graham with the Kings Mountain Police Department arrived on scene.

9.      That prior to the canine officer's arrival, the defendant advised Deputy Hester that she possessed illegal narcotics in the vehicle.

10.      That upon the canine officer's arrival following the admission, a canine sniff was done and confirmed the presence of narcotics in the vehicle.

11.      That a subsequent search of the vehicle uncovered in what [sic] was believed to be methamphetamine in the defendant's purse along with marijuana and a glass pipe.

12.      That during the entire period of the vehicle stop, prior to the defendant's admission to the presence of narcotics and the arrival of the canine officer, Deputy Hester was waiting on dispatch to run all the information on the defendant and the vehicle with regards to the original basis of the stop for left of center and driving without an active license.

13. At no time did Deputy Hester prolong the stop involved

in this case.

(Emphasis added.)

The trial court concluded:

> 1.      Deputy Hester had reasonable, articulable suspicion
> and justification to stop the vehicle based on the violation
> of driving left of center and knowledge the defendant was
> driving without an active license.
>
> 2.      The Court also concludes as a matter of law that
> Deputy Hester did not violate the defendant's Fourth
> Amendment *rights in that the consent to search was given*
> *within the context of the stop* and the stop was not extended.
>
> 3.      The Court also concludes as a matter of law that
> Deputy Hester *received consent from the defendant to*
> *search the vehicle* and, upon searching, found what he
> believed to be methamphetamine in the defendant's
> vehicle, thus establishing probable cause.

(Emphasis added.)  Thereafter, defendant entered a plea arrangement to plead guilty

to possession of methamphetamine while reserving her right to appeal the denial of

her motion to suppress.  On 6 September 2019, the trial court entered judgment for

possession of methamphetamine, and defendant appeals.

## II.      Defendant's Appeal

Defendant contends the trial court erred in denying her motion to suppress.

## A.  Standard of Review

> The standard of review in evaluating the denial of a motion
> to suppress is whether competent evidence supports the
> trial court's findings of fact and whether the findings of fact

support the conclusions of law. The trial court's findings
are conclusive on appeal if supported by competent
evidence, even if the evidence is conflicting. Conclusions of
law are reviewed de novo and are subject to full review.
Under a de novo review, the court considers the matter
anew and freely substitutes its own judgment for that of
the lower tribunal.

*State v. Royster*, 224 N.C. App. 374, 375–76, 737 S.E.2d 400, 402–03 (2012) (citations

and quotation marks omitted).

**B. Findings of Fact**

¶ 5        Defendant primarily challenges many of the findings of fact based on

arguments regarding the exact sequence of events.  *Both* Deputy Hester and

defendant's testimonies establish that defendant was stopped; Deputy Hester asked

for consent to search the vehicle; defendant denied the request for consent; Deputy

Hester called in the K-9 officer; and after this call, defendant admitted she had drugs

in the vehicle.

¶ 6        But there was also conflicting evidence as to the details of the interactions

between Deputy Hester and defendant and the timing of the relevant events, and the

findings of fact do not resolve these conflicts. *See generally State v. Bartlett*, 368 N.C.

309, 312, 776 S.E.2d 672, 674 (2015) ("At the suppression hearing in this case,

disagreement between two expert witnesses created a material conflict in the

evidence. Although defendant did not dispute the officer's testimony about what

happened during the field sobriety tests, defendant's expert sharply disagreed with

the officer's opinion on whether defendant's performance indicated impairment. Expert opinion testimony is evidence, and the two expert opinions in this case differed from one another on a fact that is essential to the probable cause determination— defendant's apparent degree of impairment. Thus, a finding of fact, whether written or oral, was required to resolve this conflict. Here, Judge Jones made no such finding. Although he did attempt to explain his rationale for granting the motion, we cannot construe any of his statements as a definitive finding of fact that resolved the material conflict in the evidence. Without such a finding, there can be no meaningful appellate review of the trial judge's decision. *See Salinas,* 366 N.C. at 124, 729 S.E.2d at 66. Accordingly, the oral ruling by Judge Jones did not comply with N.C.G.S. §§ 15A–974 and 15A–977.")

¶ 7        Defendant's testimony raised an issue regarding the timing of when Deputy Hester seized the drugs in relation to the canine sniff. Defendant claims Deputy Hester removed the drugs from the vehicle before the K-9 officer's arrival, and then he put the drugs back into the car and allowed the sniff for training purposes. Deputy Hester testified that defendant confessed; the K-9 officer arrived; the dog sniffed the vehicle; then he searched the vehicle to seize the drugs. The order does not include any findings resolving the conflicting evidence as to the potential timing issue or the relevance of the K-9 officer's search. Finding of fact 10 notes that the canine sniff "confirmed the presence of narcotics in the vehicle" but does not state whether the

narcotics were found based upon defendant's admission before the K-9 officer arrived,

as defendant testified.

¶ 8     But the trial court did not base its ruling regarding the search upon

Defendant's "admission" or the canine sniff for the narcotics. The trial court

concluded:

> 2.    The Court also concludes as a matter of law that
> Deputy Hester did not violate the defendant's Fourth
> Amendment rights in that *the consent to search* was given
> within the context of the stop and the stop was not
> extended.
>
> 3.    The Court also concludes as a matter of law that
> Deputy Hester *received consent* from the defendant to
> search the vehicle and, upon searching, found what he
> believed to be methamphetamine in the defendant's
> vehicle, thus establishing probable cause.

(Emphasis added.)  Thus, the specific basis for the trial court's denial of defendant's

motion to suppress is her "consent to search[.]"

¶ 9     The State argues the consent mentioned in conclusions of law 2 and 3 is based

upon defendant's consent for the canine to sniff and the officer to search the vehicle

after her confession.  The State summarizes the evidence as follows:

> Upon the arrival of the K-9 officer however, she did
> give consent to a search of her vehicle.  According to
> Defendant, upon arriving the K-9 officer asked her, "Do you
> mind since I'm here, for dog training purposes, to go ahead
> and search your car?" (T p 63) Defendant responded, "No, I
> don't care.  Go ahead."  (*Id.*)  She continued, "He already
> had the drugs in his car, Hester.  He had to go back, put it

> back where it was in my car so the canine could do its training thing – I consented to that – and then take the drugs back out."

¶ 10    The trial court is the finder of fact, and we cannot assume facts from the unusual evidence of this alleged transaction where defendant claimed the drugs were removed from the vehicle before the canine arrived and then put back into the vehicle. We note that even according to the State's summary of the evidence, Deputy Hester had seized the drugs *before* defendant "consented" for the canine to sniff, and thus it does not make sense for the trial court to base its determination of defendant's "consent" on a "consent" which occurred *after* the drugs were seized. Further, the trial court's findings of fact do not discuss most of the evidence the State relies upon in its argument on appeal regarding consent, as the trial court's written findings of fact mention *only* the request for consent to search before the call for the canine, and the trial court found defendant did not consent at that point.

¶ 11    The State also contends this Court should note the trial court's oral findings of fact. At the hearing, while the trial court briefly explained why it denied the motion, it did not render oral findings of fact and conclusions of law which were then memorialized in a written order as the State contends. The trial court's rendition in open court does not clarify the basis for denial of the motion to suppress. Because the findings of fact are not sufficient to allow proper appellate review, we must remand for further findings of fact, particularly regarding whether and when defendant

consented to a search and the timing of the search and seizure in relation to the consent and the call for, arrival, and sniff of the canine officer. *See Bartlett*, 368 N.C. at 312, 776 S.E.2d at 674 ("In determining whether evidence should be suppressed, the trial court 'shall make findings of fact and conclusions of law which shall be included in the record.' N.C.G.S. § 15A–974(b) (2013); *see also id.* § 15A–977(f) (2013) ('The judge must set forth in the record his findings of facts and conclusions of law.') A written determination setting forth the findings and conclusions is not necessary, but it is the better practice. *State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012). Although the statute's directive is in the imperative form, only a material conflict in the evidence—one that potentially affects the outcome of the suppression motion—must be resolved by explicit factual findings that show the basis for the trial court's ruling. *State v. Salinas*, 366 N.C. 119, 123–24, 729 S.E.2d 63, 66 (2012); *State v. Ladd*, 308 N.C. 272, 278, 302 S.E.2d 164, 168 (1983). When there is no conflict in the evidence, the trial court's findings can be inferred from its decision. *State v. Munsey*, 342 N.C. 882, 885, 467 S.E.2d 425, 427 (1996). Thus, our cases require findings of fact only when there is a material conflict in the evidence and allow the trial court to make these findings either orally or in writing.") Without such a finding, there can be no meaningful appellate review of the trial judge's decision. *See generally id.*

Ultimately, the trial court's findings of fact are not sufficient to allow

meaningful appellate review.

### III.    Conclusion

Because the trial court failed to make sufficient findings of fact resolving conflicting evidence of material facts, we must vacate and remand for further findings of fact and the requisite conclusions of law.

VACATED and REMANDED.

Judges COLLINS and WOOD concur.