IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-727

Filed 19 March 2024

Avery County, No. 19 CRS 50701

STATE OF NORTH CAROLINA

v.

WARREN DOUGLAS JACKSON

Appeal by defendant from judgment entered 14 February 2023 by Judge R. Gregory Horne in Superior Court, Avery County. Heard in the Court of Appeals 28 February 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth G. Arnette, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for defendant-appellant.*

ARROWOOD, Judge.

Warren Douglas Jackson ("defendant") appeals from judgment entered upon his conviction for possession of methamphetamine. For the following reasons, we find that defendant received a fair trial free from prejudicial error.

I. Background

Detective Ridge Phillips ("Phillips") of the Avery County Sheriff's Office was patrolling in a rural section of Avery County, North Carolina when he saw defendant driving a truck on Squirrel Creek Road. Knowing that defendant had a revoked

driver's license at the time, Phillips pulled him over. According to Phillips, at the time of the stop, he had interacted with defendant two to three times in the past. Specifically, Phillips testified that he had previously arrested defendant for possession of a firearm by a felon and that he had been aware of defendant's previous involvement with narcotics.[1]

Upon approaching defendant's truck, Phillips testified that he asked defendant if he could search the truck to "make sure there were no guns, knives, drugs or anything in the vehicle" and that defendant consented to the search. Phillips's body camera did not record any sound while defendant was sitting in the truck, so the request to search the truck and defendant's response cannot be substantiated. According to Phillips, he then asked defendant to step out of the truck.[2]

As defendant stepped out of the truck, the audio from Phillips's body camera activated, and defendant could be heard stating, "Yeah, I got a pocketknife." As Phillips directed defendant in position for a pat-down search, the following exchange occurred:

> **Phillips**: You just got a pocketknife?
>
> **Defendant**: Yeah.
>
> **Phillips**: Alright, keep your hands out of your pockets.

---

[1] However, when asked about specific information that Phillips had on defendant relating to drug possession, Phillips stated, "I couldn't tell you."

[2] Phillips testified that while interacting with defendant, defendant did not act nervous or evasive and complied with his requests. Specifically, when asked whether there was anything "suspicious about [defendant's] behavior aside from having a knife on him," Phillips testified, "No, not on his behavior."

I am going [to] pat you down for my safety.

After patting down defendant's front right pant pocket, Phillips asked defendant, "What all is in your pocket right here?" While asking the question, Phillips simultaneously slid a travel-size pill bottle out of the pocket.[3] In response, defendant stated, "cigarette lighter and my medicine." Phillips testified, "On the pat-down I felt what was a pill bottle in the front right pocket, what I know through my training and experience to be a pill bottle. People keep their controlled substances, whether it be pills or other things, inside of it." Phillips further testified that when feeling the bottle, it was not "consistent with a prescription bottle." With the pill bottle in Phillips's hand, Phillips asked defendant what kind of medicine was in the bottle, and defendant stated, "Percocets." Phillips opened the bottle and observed two pills inside. Phillips testified that when he saw the bottle, he noticed it was not a prescription bottle.

After defendant stated he had a prescription for the pills, Phillips told defendant he was going to detain him and placed defendant in handcuffs. Phillips told defendant he "was just detaining him for now because [he] found them Percocets" and started pulling other items out of defendant's pockets, including a wallet, lighters, and a pocketknife. While searching defendant's pockets, Phillips stated, "You can't carry around Percocets in your pocket without the prescription bottle,

---

[3] When asked if he immediately pulled the pill bottle out of defendant's pocket after feeling it, Phillips testified, "Yes."

okay. That is a controlled substance."[4] Defendant replied that he kept them in a non-prescription bottle to prevent people from stealing them, given that the prescription bottle would let people know he had them.

Because of the pills, Phillips told defendant, "I am going to start the search, okay on you. It is against the law to carry Percocets like that without a prescription bottle. Like I said right now, you're just being detained. You ain't under arrest." While searching defendant's pant leg, Phillips noticed that one of defendant's pant legs was slightly stuck in his boot. Phillips searched defendant's boot and sock area and found a bag of methamphetamine. Phillips then arrested defendant for possession of methamphetamine.[5] Phillips issued defendant a citation for driving while license revoked ("DWLR").

Defendant was indicted for felony possession of methamphetamine and misdemeanor possession of a Schedule II controlled substance on 29 November 2021. Defendant moved to suppress the evidence obtained during the traffic stop on 20 May 2022, arguing that Phillips did not have probable cause to search him or the truck, nor did Phillips have any other basis to conduct the searches.

A suppression hearing was held before trial on 13 and 14 February 2023. Phillips was the sole witness called during the hearing. When asked on the first day

---

[4] Although it is illegal to possess a controlled substance without a valid prescription, N.C.G.S. § 90-95(a)(3), no statutory provision exists in North Carolina that prohibits a person from possessing their prescription medicine outside of its original prescription container.

[5] Phillips specifically told defendant he was "under arrest for possession of methamphetamine."

of the hearing whether defendant would have been detained based on his revoked license status—even if no contraband had been found—the following exchange occurred between Phillips and the State:

> **Phillips**:   Yes, he can be arrested for that.
>
> **The State**: So would he have been able to drive away from the scene had you found nothing on his person?
>
> **Phillips**:   No.

On the second day of hearing, the exchange with respect to Phillips's intentions continued:

> **The State**: Yesterday you indicated that even if taking all, if nothing was found during your search of defendant or nothing was found in the vehicle, that the defendant would not have been allowed to leave the scene?
>
> **Phillips**:   Correct.
>
> **The State**: What would you have done with defendant, assuming nothing else was found, what would you have done with him?
>
> **Phillips**:   Arrested him for driving while licensed revoked.

Phillips further testified that, after arresting someone for DWLR, he would search their person before placing them in his patrol car. On cross-examination of Phillips, defendant's questioning centered on Phillips's interactions with defendant leading up to and during the protective frisk and the pocket search. Defendant presented no

other evidence for the suppression motion. At the hearing's conclusion, the trial court denied defendant's motion and concluded that the search was lawful and that there was no constitutional violation of defendant's rights.

The possession of methamphetamine charge proceeded to jury trial, and defendant was found guilty of possession of methamphetamine. The trial court sentenced defendant to six to seventeen months' imprisonment, suspended for twenty-four months' supervised probation, on 14 February 2023. Defendant gave notice of appeal in open court. The misdemeanor possession charge was dismissed on 14 June 2023.

## II. Discussion

Defendant raises numerous arguments on appeal. Defendant contends the seizure of the pill bottle exceeded the scope of a protective frisk and that because defendant was never arrested for DWLR, the search incident to arrest exception to the warrant requirement was inapplicable. Defendant also argues that defendant lacked probable cause to open the container. Lastly, in the alternative, defendant argues that the arrest for possession of the pills was not supported by probable cause. The State contends that the search and seizure were lawful, and, even if unlawful, the motion was still properly denied because the methamphetamine found in defendant's boot was admissible under the inevitable discovery doctrine.

### A. Standard of Review

"Our review of a trial court's denial of a motion to suppress is strictly limited

to a determination of whether the trial court's findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Reynolds*, 161 N.C. App. 144, 146–47 (2003) (cleaned up). "The trial court's conclusions of law, however, are reviewed de novo." *State v. Duncan*, 272 N.C. App. 341, 345 (2020) (citing *State v. Fernandez*, 346 N.C. 1, 11 (1997)). "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in light most favorable to the State." *Id.* (cleaned up).

### B. The "Plain Feel" Doctrine and Probable Cause

Evidence of contraband during a protective frisk may be admissible under the "plain feel" doctrine, provided that the officer "feels an object whose contour or mass" make its incriminating nature immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). In other words, evidence of contraband—plainly felt during a frisk—may be admissible if "the officer had probable cause to believe that the item was in fact contraband." *State v. Shearin*, 170 N.C. App. 222, 226 (2005) (citing *Dickerson*, 508 U.S. at 375–77). In determining whether an object's incriminating nature was immediately apparent and whether probable cause existed to seize it, the totality of the circumstances is considered. *State v. Robinson*, 189 N.C. App. 454, 459 (2008) (citation omitted). When such "*facts and circumstances within the officer's knowledge* are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband, probable cause exists." *State v. Briggs*, 140 N.C. App.

484, 493 (2000) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (emphasis in original).

In *Robinson*, this Court held that there was probable cause to seize a film canister during a protective frisk because sufficient information existed to believe it contained contraband. 189 N.C. App. at 459–60. In concluding that probable cause existed, this Court considered that (1) the defendant was stopped in an area known for being a "drug location," (2) the officer had reports that the defendant sold drugs nearby; (3) the defendant "stopped talking, straightened up very abruptly, and looked surprise or frightened" when the officer made eye contact; (4) the officer thought defendant would flee and that the defendant then "started backing away, turned his right side away from the officer, and reached into his right pocket"; (5) the officer had "arrested at least three others who had exactly the same type of canister" with narcotics stored in them; and (6) the officer testified that it was immediately apparent that crack-cocaine was packaged in the film canister. *Id.* at 459 (cleaned up).

Here, the State, relying heavily on *Robinson*, contends that Phillips had probable cause to seize the pill bottle under the "plain feel" doctrine. We do not accept this contention because the facts and circumstances present at the time Phillips seized the pill bottle are substantially different from those in *Robinson*. Unlike *Robinson*, defendant was not in a "drug location," and there were no reports that defendant sold drugs in the area. Defendant also provided no reason for Phillips to believe that he was nervous during the stop and complied with Phillips's requests.

Further, Phillips felt what he knew to be a pill bottle, which is distinct from a film canister in that people commonly carry such containers with their medication inside.[6] Thus, the State's application of the "plain feel" doctrine and reliance on *Robinson* is incorrect.[7]

We also reject the State's contention that the unlabeled pill bottle, for which defendant was unable to provide a prescription during the stop, gave Phillips probable cause that it contained contraband and to seize it. The State was unable to cite to a single case in North Carolina to support this contention, and many jurisdictions expressly reject the idea. *See People v. Alemayehu*, 494 P.3d 98, 108–09 (Colo. App. 2021) (citing several "authorities [that] reject the idea that an unlabeled pill pottle, in and of itself, constitutes probable cause" and concluding the same). However, even assuming *arguendo* that Phillips's search and seizure violated defendant's constitutional rights, the methamphetamine found in defendant's boot was still admissible because the contraband's discovery was shown to be inevitable.

### C. Inevitable Discovery

---

[6] We do not imply that possessing a film canister alone constitutes probable cause either. *See State v. Sapatch*, 108 N.C. App. 321, 325 (1992) (holding that "[p]ossession of film canisters, without more, is insufficient to give rise to probable cause of a crime" even if the officer "had personal knowledge of their illegal use in other incidents."). However, carrying around a film canister in the digital age is less common than having a pill bottle with medication.

[7] This case is further distinct from *Robinson* in that Phillips never testified to previously arresting individuals for carrying controlled substances in the same type of pill bottle, nor did Phillips testify that it was immediately apparent to him that the pill bottle contained contraband.

In response to the State's argument relating to the inevitable discovery doctrine, defendant contends that Phillip's discovery of the methamphetamine was not inevitable because defendant was not placed under arrest for DWLR and the trial court's finding was insufficient to support a conclusion that Phillips would have arrested defendant for driving while license revoked had the drugs not been located. Because that finding was inferred under our case law, we disagree.

Under the exclusionary rule, evidence obtained via unconstitutional search and seizure is generally inadmissible in a criminal case. *State v. Garner*, 331 N.C. 491, 505–06 (1992). However, under the inevitable discovery doctrine, "if the State can establish by a preponderance of the evidence that the contraband ultimately or inevitably would have been discovered by lawful, independent means, then it is admissible." *State v. Larkin*, 237 N.C. App. 335, 343 (2014) (cleaned up). This Court "use[s] a flexible case-by-case approach in determining inevitability." *Id.* (citing *Garner*, 331 N.C. at 503).

In the case *sub judice*, Phillips testified that—assuming no contraband had been discovered on defendant's person or in the truck—he would have arrested defendant for DWLR and subsequently searched defendant before transporting him in his patrol car. Upon review of the suppression hearing transcript, we agree with defendant that the trial court made no express finding as to whether Phillips would have made such an arrest. However, our Supreme Court has held that "only a material conflict in the evidence—one that potentially affects the outcome of the

suppression motion—must be resolved by explicit factual findings that show the basis for the trial court's ruling." *State v. Bartlett*, 368 N.C. 309, 312 (2015) (citations omitted). "When there is no conflict in the evidence, the trial court's findings can be inferred from its decision." *Id.* (citation omitted); *State v. Munsey*, 342 N.C. 882, 885 (1996) ("If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court."). Consequently, "our cases require findings of fact only when there is a material conflict in the evidence and allow the trial court to make these findings either orally or in writing." *Bartlett*, 368 N.C. at 312.

Here, defendant presented no evidence that conflicted with Phillips's testimony that he would have arrested defendant for DWLR had no contraband been found. Instead, defendant's evidence—consisting only of a brief cross-examination of Phillips—focused on Phillips's interactions with defendant regarding the protective frisk and the pocket search. Because defendant's evidence failed to controvert Phillips's testimony, the finding that Phillips would have arrested defendant for DWLR is thus inferred under *Bartlett*. *See State v. Baker*, 208 N.C. App. 376, 384 (2010) ("[A] material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected.").

Based on that inferred finding, the State provided sufficient evidence to support a finding that, had defendant not been arrested for possession of the seized

substances, he would have been arrested for DWLR. In conjunction with such an arrest, the officer would have conducted a search incident to that arrest which would have led to the discovery of methamphetamine. Thus, the seizure was inevitable even if we reject the State's contentions regarding the initial pat down and search. Accordingly, the trial court did not err in denying the defendant's motion to suppress.

III.     Conclusion

For the foregoing reasons, we find defendant had a fair trial free from prejudicial error.

NO ERROR.

Judge COLLINS concurs.

Judge STADING concurs in result only.