STATE OF NORTH CAROLINA v. ROBERT LEE JOHNSON, JR.

No. COA06-751

(Filed 5 June 2007)

**1. Evidence— letter written to victim by defendant's daughter—testimony by daughter—not prejudicial**

There was no prejudicial error in a prosecution for attempted first-degree murder and other charges by admitting the victim's testimony about a letter written to her by her downstairs neighbor, defendant's daughter, as well as testimony by the daughter about the crime and defendant. The court instructed the jury to consider the testimony about the letter only to the extent that it corroborated the testimony of the daughter, who testified without objection, and instructed the jury to disregard the daughter's testimony that she did not believe defendant's defense.

**2. Kidnapping— evidence of restraint independent of accompanying crime—sufficiency**

The trial court did not err by denying defendant's motion to dismiss a kidnapping charge where defendant alleged that the restraint was an inherent element of the other charged felony (first-degree murder by putting an arm around her neck and a hand over her mouth and nose), but there was sufficient evidence of an independent restraint (blocking the only exit and locking the door).

**3. Kidnapping— for purpose of committing breaking or entering, larceny, or flight—disjunctive instruction—evidence of two purposes not sufficient**

Defendant received a new trial and his habitual felon status was vacated where he was convicted of kidnapping for the purpose of breaking or entering, or larceny, or flight, there was evidence that defendant had already committed breaking or entering and larceny when the victim was restrained, and it could not be discerned from the record which was relied upon by the jury.

Appeal by Defendant from judgment dated 23 January 2006 by Judge A. Leon Stanback in Superior Court, Wake County. Heard in the Court of Appeals 8 March 2007.

STATE v. JOHNSON

[183 N.C. App. 576 (2007)]

*Attorney General Roy Cooper, by Assistant Attorney General David N. Kirkman, for the State.*

*George B. Currin for Defendant-Appellant.*

McGEE, Judge.

Robert Lee Johnson, Jr. (Defendant) was indicted on 16 May 2005 on ·charges of attempted first-degree murder, first-degree kidnapping, felony breaking or entering, and felony larceny. Defendant was also indicted for being a violent habitual felon. In a superceding indictment dated 25 September 2005, Defendant was again indicted on the charges of attempted first-degree murder and first-degree kidnapping.

At trial, Melissa Walsh (Ms. Walsh) testified that she had lived with her fiancée in a second floor apartment at 916 Shellbrook Court in Raleigh since 2004. Ms. Walsh testified she first met Defendant on the day she and her fiancée moved into their apartment, when Defendant offered to help them carry a couch. After that, Ms. Walsh did not have any contact with Defendant other than "the casual hello that neighbors give[.]"

Ms. Walsh testified that on 9 April 2005, she and her fiancée took their dog for a walk around their apartment complex. Ms. Walsh returned to their apartment alone and noticed that the door to their apartment was "slightly cracked" open. They had left the door closed, but not locked, when they went for their walk.

Ms. Walsh assumed someone was performing maintenance in her apartment and went inside. She testified: "As I was pushing the door open it hit up against something and . . . I hadn't left anything behind the door for it to hit into. So I continued to push and I stepped inside and that's when I saw . . . [D]efendant with DVDs and a camera." Ms. Walsh testified that Defendant had five of her DVDs and her camera in his hands. She asked Defendant what he was doing inside her apartment and he responded that he was "fixing something, had to return something." However, Ms. Walsh knew of no reason Defendant should be inside the apartment. Ms. Walsh asked Defendant to leave the apartment five or six times, but Defendant did not leave. He continued to "stand by the door" with his back to the door, which was the only exit in the apartment. When Ms. Walsh pulled out her cell phone to call 911, Defendant came towards her and put one of his arms around her neck so that she could not move. Defendant then put his

other hand over her mouth and nose and Ms. Walsh testified that she lost consciousness.

Ms. Walsh also testified regarding a note she received after the incident from her downstairs neighbor, who was Defendant's daughter (Ms. Johnson), and with whom Defendant was living at the time of the incident. Defendant made a general objection, and the trial court instructed the jury that since Ms. Johnson would be testifying, the jury should consider Ms. Walsh's testimony only to the extent that it corroborated the testimony of Ms. Johnson. Ms. Walsh testified that in the letter, Ms. Johnson "apologized for what had happened and offered her support." Ms. Walsh also testified that Ms. Johnson had been nice to her since the incident.

Ms. Johnson testified, without objection, that she sent a letter to Ms. Walsh to "express [her] condolences for what [Ms. Walsh] had gone through." Ms. Johnson also testified, over general objection, that she was shocked and hurt by the incident involving Defendant and Ms. Walsh. Ms. Johnson further testified as follows:

Q. [Ms.] Johnson, did you ever see any DVDs that [Defendant] had borrowed from [Ms.] Walsh . . . ?

A. No.

Q. Okay. Were you aware of any money that [Ms. Walsh] had loaned [Defendant] or anything she had done?

A. No.

Q. Do you believe any of that?

A. No.

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Objection's sustained.·

. . .

THE COURT: The jury's instructed not to consider whether or not [Ms. Johnson] believed what she heard.

Defendant testified on his own behalf, stating that he lived with his daughter in the apartment below Ms. Walsh's apartment. Defendant testified that approximately three weeks prior to 9 April 2005, Ms. Walsh had given Defendant money to buy her Valium or

cocaine. Defendant testified that he purchased Valium and cocaine and gave the drugs to Ms. Walsh.

Defendant testified that on 8 April 2005, the day before the incident, Ms. Walsh had again given Defendant money to purchase drugs. At the same time, Defendant testified that he borrowed some DVDs from Ms. Walsh. Defendant testified that he took Ms. Walsh's money and bought cocaine. However, he used the cocaine himself and did not take any cocaine to Ms. Walsh. Defendant testified that the next day, 9 April 2005, Ms. Walsh knocked on the door of Defendant's apartment and asked Defendant to bring to her apartment her drugs and the DVDs Defendant had borrowed. Defendant took the DVDs to Ms. Walsh's apartment and told her he did not have her drugs or her money. Defendant testified that Ms. Walsh became "outraged," started "acting crazy," and began fighting with Defendant. Defendant testified that he put one arm around Ms. Walsh's neck and used the other arm to try to stop her from fighting. Defendant testified that he heard Ms. Walsh's fiancée coming up the stairs with the dog. Defendant then threw Ms. Walsh down on the floor, closed the door, and locked it. Defendant ran to the balcony located in the rear of the apartment and jumped off the balcony.

The trial court instructed the jury on the relevant charges. As part of the charge on first-degree kidnapping and second-degree kidnapping, the trial court instructed the jury that it could convict Defendant if it found, *inter alia*, that Defendant restrained or confined Ms. Walsh "for the purpose of facilitating . . . [D]efendant's commission of[,] or flight after committing[,] felony breaking or entering or felony larceny[.]" Defendant did not object to this jury instruction. The jury found Defendant not guilty on the charge of attempted first-degree murder. The jury convicted Defendant of second-degree kidnapping, felonious breaking or entering, and felony larceny. The jury also found Defendant had attained the status of a violent habitual felon. The trial court sentenced Defendant to life in prison without parole. Defendant appeals.

I.

[1] Defendant argues the trial court erred by allowing Ms. Walsh to testify regarding the letter written to her by Ms. Johnson. However, Defendant made only a general objection to this testimony, and the trial court instructed the jury to consider this testimony only to the extent that it corroborated the testimony of Ms. Johnson. Ms. Johnson subsequently testified, without objection, regarding the let-

ter she sent to Ms. Walsh. Therefore, Ms. Walsh's testimony corroborated the testimony of Ms. Johnson.

Defendant also argues the trial court erred by allowing Ms. Johnson to testify that she was "shocked" and "hurt" by the incident between Defendant and Ms. Walsh. Defendant further argues defense counsel should have moved for, and the trial court should have granted, a mistrial after Ms. Johnson testified that she did not believe elements of Defendant's defense. While we agree with Defendant that it was error for Ms. Johnson to testify that she was "shocked" and "hurt" and that she did not believe Defendant's defense, such error was not prejudicial. Moreover, after Ms. Johnson testified that she did not believe parts of Defendant's defense, the trial court sustained defense counsel's objection. The trial court further instructed the jury "not to consider whether or not [Ms. Johnson] believed what she heard." "When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991). We overrule these assignments of error.

## II.

[2] Defendant argues the trial court erred by denying his motions to dismiss the kidnapping charge because the restraint necessary for kidnapping was an inherent element of the other charged felony of attempted first-degree murder. On a motion to dismiss for insufficiency of the evidence, a trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). A trial court views the evidence in the light most favorable to the State, drawing all inferences in the State's favor. *Id.* at 584, 461 S.E.2d at 663.

Under N.C. Gen. Stat. § 14-39(a) (2005),

[a]ny person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]

In *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), our Supreme Court held that N.C.G.S. § 14-39 "was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy." *Id.* at 523, 243 S.E.2d at 351.

Our Supreme Court further specifically stated that

the term "confine" connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement.

*Id.* The Court construed the word " 'restrain,' as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony." *Id.*

In the present case, Ms. Walsh testified that Defendant placed one of his arms around her neck and put his other hand over her mouth and nose. While this was sufficient evidence of "restraint," we need not decide whether this restraint was inherent in the other charged felony of attempted first-degree murder. Even assuming *arguendo* that the evidence of "restraint" was inherent in both the kidnapping charge and the charge of attempted first-degree murder, there was sufficient independent evidence that Defendant "confined" Ms. Walsh and that the confinement was not inherent in any other charged felony. As our Supreme Court stated in *Fulcher*, the term " 'confine' connotes some form of imprisonment within a given area, such as a room[.]" *Id.* Ms. Walsh testified that although she asked Defendant to leave her apartment, he continued to "stand by the door" with his back to the only exit. Moreover, Defendant admitted that he closed and locked the door to the apartment, thereby confining Ms. Walsh inside. We hold that this was sufficient evidence that Defendant confined Ms. Walsh and that the trial court did not err by denying Defendant's motions to dismiss.

### III.

[3] Defendant next argues the trial court committed plain error by instructing the jury that it could find Defendant guilty of kidnapping

if it found that Defendant restrained or confined Ms. Walsh for the purpose of committing the offenses of breaking or entering, or larceny, or to facilitate his flight after committing those offenses. Defendant argues there was no evidence that he restrained or confined Ms. Walsh for the purpose of committing the offenses of breaking or entering or larceny. Therefore, Defendant argues, the trial court's disjunctive jury instruction deprived him of his fundamental right to a unanimous jury verdict.

Pursuant to the North Carolina Constitution, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24. N.C. Gen. Stat. § 15A-1237(b) (2005) also provides that a jury verdict "must be unanimous, and must be returned by the jury in open court." Generally, a defendant's failure to object to an alleged error of the trial court precludes the defendant from raising the error on appeal. *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). "Where, however, the error violates [a] defendant's right to a trial by a jury of twelve, [a] defendant's failure to object is not fatal to his right to raise the question on appeal." *Id.*; *see also State v. Brewer*, 171 N.C. App. 686, 691, 615 S.E.2d 360, 363 (2005) (quoting *State v. Wiggins*, 161 N.C. App. 583, 592, 589 S.E.2d 402, 409 (2003), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 34 (2004)), *disc. review denied*, 360 N.C. 484, 632 S.E.2d 493 (2006) (stating that " '[v]iolations of constitutional rights, such as the right to a unanimous verdict . . . are not waived by the failure to object at trial and may be raised for the first time on appeal.' ").

Our Supreme Court has held that where a "trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." *State v. Lyons*, 330 N.C. 298, 303, 412 S.E.2d 308, 312 (1991). However, as we discuss below, where the trial court instructs disjunctively in this manner, there must be evidence to support all of the alternative acts that will satisfy the element.

In *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987), the trial court instructed the jury on felony murder based upon armed robbery and felonious breaking or entering. *Id.* at 567, 356 S.E.2d at 322. On appeal, our Supreme Court held the State failed to prove that the defendants possessed a deadly weapon at the time of the felonious breaking or entering and ruled that breaking or entering could not be used as a predicate to felony murder. *Id.* at 573, 356 S.E.2d at 326. The Supreme Court held:

> Where the trial [court] has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant.

*Id.* at 574, 356 S.E.2d at 326. Because it was not clear upon which predicate felony the jury based its verdict of guilty of felony murder, the Supreme Court ordered a new trial. *Id.*

Our Supreme Court followed *Pakulski* in *State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990), where the trial court instructed the jury that it could find the defendant guilty of first-degree murder either on a theory of premeditation and deliberation or on a theory of lying in wait. *Id.* at 212, 393 S.E.2d at 812. However, our Supreme Court concluded there was no evidence that the defendant was lying in wait by ambushing or surprising the victim and, therefore, the trial court erred by instructing the jury on this theory. *Id.* at 218-19, 393 S.E.2d at 816. Accordingly, because "it [could not] be discerned from the record upon which theory or theories the jury relied in arriving at its verdict, the error entitle[d] [the] defendant to a new trial." *Id.* at 219, 393 S.E.2d at 816 (citing *Pakulski*, 319 S.E.2d at 574, 356 S.E.2d at 326).

In *State v. Hughes*, 114 N.C. App. 742, 443 S.E.2d 76, *disc. review denied*, 337 N.C. 697, 448 S.E.2d 536 (1994), the trial court instructed the jury that it could find the defendant guilty of first-degree sexual offense if it found, *inter alia*, that the defendant committed a sexual act. *Id.* at 746, 443 S.E.2d at 79. A sexual act was defined as fellatio and/or any penetration of the genital opening of a person's body by an object. *Id.* However, there was no evidence of penetration by an object. *Id.* Our Court recognized:

> Where the trial court instructs on alternative theories, one of which is not supported by the evidence and the other which is, and it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict, the error entitles [the] defendant to a new trial.

*Id.* (citing *Lynch*, 327 N.C. at 219, 393 S.E.2d at 816). We held that "[b]ecause there was no evidence of penetration by an object, the trial court erred in instructing that the jury could base a conviction of

sexual offense on either fellatio or penetration by an object." *Id.* Therefore, our Court held: "We are required, we believe, to order a new trial on the charge of first-degree sexual offense." *Id.*

Likewise, in the present case, there was no evidence that Defendant restrained or confined Ms. Walsh for the purpose of committing the offenses of breaking or entering or larceny. The State concedes this point as follows:

> The heart of [Defendant's] . . . argument is that a reviewing court cannot tell whether a jury found that his restraint of Ms. Walsh was done in the perpetration of the felonies of larceny and breaking and entering or as part of his effort to flee following those crimes. After reviewing the record as a whole, the court can conclude rather easily that it was the latter. There was not any evidence of the former.

Ms. Walsh testified that when she returned to her apartment, Defendant was already inside and was holding the DVDs and the camera. Ms. Walsh testified that Defendant stood by the door and Defendant admitted that he locked the door. Ms. Walsh testified that Defendant then put one arm around her neck and put his other hand over her nose and mouth. Ms. Walsh also testified that Defendant did not take the DVDs or the camera when he fled from the apartment. Therefore, at the time Defendant restrained or confined Ms. Walsh, he had already committed the offenses of breaking or entering and larceny. *See State v. Wooten*, 1 N.C. App. 240, 242, 161 S.E.2d 59, 60 (1968) (holding that "[t]he breaking of the station window, with the requisite intent to commit a felony therein, completes the offense [of breaking or entering] even though the defendant [was] interrupted or otherwise abandon[ed] his purpose without actually entering the building."); *see also State v. Walker*, 6 N.C. App. 740, 743, 171 S.E.2d 91, 93 (1969) (recognizing that "[w]hile there must be a taking and carrying away of the personal property of another to complete the crime of larceny, it is not necessary that the property be completely removed from the premises of the owner."). Consequently, there was no evidence that Defendant restrained or confined Ms. Walsh for the purpose of committing the offenses of breaking or entering or larceny. As in *Hughes*, the trial court in the present case instructed the jury on alternative theories, "one of which [was] not supported by the evidence and the other which [was], and it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict[.]" *Hughes*, 114 N.C. App. at 746, 443 S.E.2d at 79.

Therefore, based upon *Pakulski*, *Lynch*, and *Hughes*, Defendant is entitled to a new trial in the present case on the charge of second-degree kidnapping.

Furthermore, because we grant a new trial on the charge of second-degree kidnapping, and because second-degree kidnapping formed part of the basis for Defendant's conviction of having attained violent habitual felon status, we must vacate the violent habitual felon conviction. *See State v. Jones*, 157 N.C. App. 472, 479, 579 S.E.2d 408, 413 (2003) (stating that "[s]ince we hold that [the] defendant is entitled to a new trial on the felony eluding arrest charge, which served as the 'substantive felony' underlying his conviction for having habitual felon status, [the] defendant's habitual felon conviction must be vacated.").

We do not reach Defendant's remaining assignments of error because the errors argued thereunder are not likely to recur upon retrial.

No error in part; new trial in part; vacated in part.

Judges TYSON and STEPHENS concur.