An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA 14-51

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

STATE OF NORTH CAROLINA

v.

GARY MAURICE WALTERS

Robeson County
Nos. 05 CRS 12241, 55647

Appeal by defendant from judgments entered 28 June 2013 by Judge William R. Pittman in Robeson County Superior Court. Heard in the Court of Appeals 5 June 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Daniel Snipes Johnson, for the State.*
>
> *Attorney Paul F. Herzog for Defendant.*

ERVIN, Judge.

Defendant Gary Maurice Walters appeals from judgments entered based upon his convictions for first degree kidnapping, attempted first degree murder, and assault with a deadly weapon with the intent to kill inflicting serious injury.  On appeal, Defendant contends that the trial court erred by (1) denying his motion to dismiss the charges that had been lodged against him on the basis of an alleged violation of his right to a speedy

trial and (2) instructing the jury concerning the issue of his guilt of first degree kidnapping. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the trial court's judgments relating to Defendant's convictions for attempted first degree murder and assault with a deadly weapon with the intent to kill inflicting serious injury should remain undisturbed and that Defendant is entitled to a new trial in the case in which he was convicted of first degree kidnapping.

## I. Factual Background

## A. Substantive Facts

## 1. State's Evidence

On Wednesday, 17 August 2005, Paul Franklin was in Lumberton. On that evening, Mr. Franklin was "upset over [his] marriage situation." Based upon previous experiences, Mr. Franklin knew that a prostitute could lead him to a place at which he could purchase cocaine. As a result, Mr. Franklin picked up "an African American young lady," whom he described as "short, peti[t]e," at the intersection of Carolina Avenue and First Street.

After purchasing crack cocaine on First Street, Mr. Franklin and the young woman drove to the Redwood Inn, where Mr. Franklin rented a room in which he and the young woman smoked

the small amount of cocaine that Mr. Franklin had purchased. Once the cocaine in Mr. Franklin's possession had been consumed, the woman offered to call her cousin if Mr. Franklin wanted more cocaine. After meeting Defendant, who was the woman's cousin, Mr. Franklin bought cocaine from him.

Over the course of the next two days, Mr. Franklin continued to buy and smoke cocaine. After running out of money with which to purchase additional cocaine, Mr. Franklin allowed Defendant to use his gray Ford Windstar. According to Mr. Franklin, Defendant returned to Mr. Franklin's room every "five, six, eight hours" and gave him a new supply of cocaine in exchange for the use of the van.

On the early morning of Friday, 19 August 2005, Mr. Franklin asked Defendant to take him to an ATM to make a $100 withdrawal from his account, into which his weekly wages had been deposited.[1] As a result, Defendant and Mr. Franklin drove to an ATM near the Redwood Inn at approximately 3:30 a.m. After Mr. Franklin told Defendant that he would buy a "third of cocaine" with the proceeds obtained during the ATM transaction, Defendant brought cocaine to Mr. Franklin's hotel room at the Redwood Inn. Mr. Franklin, however, claimed that the cocaine

---

[1]At the time of the incident, Mr. Franklin worked as a truck driver for Florida Rock and Tank out of Navassa, which is located near Wilmington.

that Defendant offered him was only worth $75.00. At that point, Defendant broke off a wooden table leg from a piece of hotel room furniture.

Christopher Bass and Shelly Scott woke to the sound of Defendant, who was a friend of Mr. Bass, knocking on their door and asking to speak with Mr. Bass at approximately 5:30 or 6:00 a.m. on 19 August 2005. At Defendant's request, Mr. Bass followed Defendant, who was driving Mr. Franklin's gray Ford Windstar, in Ms. Scott's Honda Civic. After driving for approximately twenty minutes, Defendant parked beside the Lumber River near the Three Bridges Road in or around Pembroke.

After Mr. Bass parked on the main road and walked down to the location at which the van was parked, Defendant opened the van door. At that point, Mr. Bass saw Mr. Franklin lying on the rear passenger seat. According to Mr. Bass, Mr. Franklin was breathing heavily and his "face was mangled and beat up." When Defendant asked Mr. Bass if "he should kill [Mr. Franklin]," Mr. Bass questioned Defendant about "why he did it" and "what [had] happened." In response, Defendant explained that Mr. Franklin's injuries resulted from "a drug deal gone wrong" and that he had beaten Mr. Franklin with a wooden table leg at the Redwood Inn. After telling Defendant that he should not kill Mr. Franklin, Mr. Bass began walking back to the Honda Civic. Once Defendant

entered the Honda Civic as well, Mr. Bass drove Defendant to the residence of his mother in Fairmont before returning home himself.

According to Ms. Scott, Mr. Bass "flipped out and assaulted [her]" when he returned home. Mr. Bass, who claimed to have "seen someone with their face hanging off" and "their eyes popped out of their head," was "screaming and cussing." Over the course of the next several hours, Mr. Bass assaulted Ms. Scott's mother and brother as well. Although Mr. Bass nailed the windows to the residence that he shared with Ms. Scott shut and fed her sleeping pills in an attempt to keep her from leaving, Ms. Scott eventually escaped and called 911. Mr. Bass corroborated Ms. Scott's story after turning himself in and being charged with three counts of assault.

At 7:01 a.m. on 19 August 2005, emergency medical service personnel were dispatched to a location off Three Bridges Road, where they found Mr. Franklin in his van. Although the attending emergency medical service personnel were initially unable to determine whether Mr. Franklin was still alive, a check of his vital signs established that he was in critical condition. As a result, the emergency medical service personnel utilized the standard trauma response protocol by placing Mr. Franklin on a backboard and stretcher, administering oxygen,

fitting a brace around his neck, providing him with intravenous fluids, and putting him on a cardiac monitor.

At 9:56 a.m. on 19 August 2005, investigating officers were dispatched to the Redwood Inn in response to notice that Mr. Franklin's room had been found in disarray. During their examination of Mr. Franklin's room, investigating officers discovered blood on the walls, the air conditioning unit, the microwave, broken pieces of furniture, and the floor. A number of pieces of wood that had originally constituted a table leg, one of which bore Defendant's fingerprint, were recovered from the room as well.

Mr. Franklin sustained severe facial injuries as a result of the beating that he received, with every bone in his face having been broken. Mr. Franklin underwent eight surgical procedures in order to repair the damage. After Mr. Franklin contracted a Staph infection during one of these procedures, the attending physicians were unable to fully repair his nose. Although his attending physicians were able to use a skin graft taken from his right arm to address the injuries to his nose, Mr. Franklin still has difficulty breathing and suffers from sleep apnea. In addition, Mr. Franklin sustained left eye optic nerve damage, which causes him to experience double vision and have difficulty seeing. Finally, Mr. Franklin's face is

severely scarred. Although he is no longer on disability, Mr. Franklin could not return to work as a truck driver given his inability to pass the commercial driver's license examination.

## 2. Defense Evidence

Defendant's mother, Dorothy Walters, testified that her son was living at her residence in Fairmont during August 2005. More specifically, Ms. Walters testified that Defendant was still at home in bed when she left the house at 7:30 a.m. on 18 August 2005; that he was outside in the yard when she returned from work at 2:30 p.m.; and that he was at home when she returned from fishing with her daughter at approximately 8:00 p.m. Although Defendant was not at home at 8:30 p.m. on 18 August 2005, he returned home between 9:00 and 10:00 p.m. and was still at home at 6:00 a.m. on 19 August 2005. According to Ms. Walters, Defendant left to cut his grandfather's lawn at approximately 9:30 to 9:45 a.m. on 19 August 2005 and returned at approximately 1:00 p.m.

## B. Procedural Facts

On 30 August 2005, a warrant for arrest charging Defendant with attempted first degree murder was issued. On 8 September 2005, a warrant for arrest charging Defendant with first degree kidnapping was issued. On 8 May 2006, the Robeson County grand jury returned bills of indictment charging Defendant with first

degree kidnapping, attempted first degree murder, and assault with a deadly weapon with the intent to kill inflicting serious injury. On 21 September 2012, Defendant filed a motion seeking the entry of an order dismissing the charges that had been lodged against him on speedy trial grounds.

The charges against Defendant came on for trial before the trial court and a jury at the 24 June 2013 criminal session of the Robeson County Superior Court. On 25 June 2013, the trial court denied Defendant's dismissal motion. On 28 June 2013, the jury returned verdicts convicting Defendant of first degree kidnapping, attempted first degree murder, and assault with a deadly weapon with the intent to kill inflicting serious injury. At the conclusion of the ensuing sentencing hearing, the trial court entered judgments sentencing Defendant to a term of 220 to 273 months imprisonment based upon his conviction for attempted first degree murder, to a consecutive term of 110 to 141 months imprisonment based upon his conviction for assault with a deadly weapon with the intent to kill inflicting serious injury, and to a consecutive term of 110 to 141 months imprisonment based upon his conviction for first degree kidnapping. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Right to a Speedy Trial

In his initial challenge to the trial court's judgments, Defendant contends that the trial court "committed prejudicial error when it denied [his] motion to dismiss for lack of speedy trial." More specifically, Defendant contends that the delay involved in this case was significant, that the lengthy delays revealed by the present record were attributable to the State rather than to Defendant, that the State did not call Defendant's case for trial for more than a year after he asserted his right to a speedy trial, and that Defendant was clearly prejudiced by the lapse in time between the date upon which he was charged and the date upon which this case was called for trial given the weakness of the alibi defense that he was able to present before the jury. Although the delay at issue here is, as best we can tell, unprecedented, we conclude, based upon a careful analysis of the applicable law, that Defendant is not entitled to relief from the trial court's judgments on the basis of this contention.

### 1. Applicable Legal Principles

Every individual formally accused of committing a crime has the right to a speedy trial. *State v. Lyszaj*, 314 N.C. 256, 261, 333 S.E.2d 288, 292 (1985); *State v. Avery*, 302 N.C. 517, 521, 276 S.E.2d 699, 702 (1981). More specifically, the Sixth Amendment to the United States Constitution, which has been made

applicable to the states under the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S. Ct. 988, 993, 18 L. Ed. 2d 1, 8 (1967) provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. Similarly, Article I, Section 18 of the North Carolina Constitution provides that "[a]ll courts shall be open[] [to] every person . . . without favor, denial, or delay." N.C. Const. art. 1, § 18. When reviewing speedy trial claims, we employ the same analysis for purposes of both the Sixth Amendment and Article I, Section 18. *State v. Flowers*, 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997), *cert. denied*, 522 U.S. 1135, 118 S. Ct. 1094, 140 L. Ed. 2d 150 (1998). "The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009), *appeal dismissed and disc. review denied*, 363 N.C. 857, 694 S.E.2d 766 (2010).

In evaluating the validity of a defendant's claim to have been deprived of his state and federal constitutional right to a speedy trial, reviewing courts consider four factors: "(1) the length of the delay, (2) the reason for the delay, (3) [the] defendant's assertion of his right to a speedy trial, and (4) prejudice to [the] defendant[.]" *State v. Washington*, 192 N.C. App. 277, 282, 665 S.E.2d 799, 803 (2009); *see also Barker v.*

*Wingo*, 407 U.S. 514, 530-32, 92 S. Ct. 2182, 2192-93, 33 L. Ed. 2d 101, 117 (1972).

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*State v. Spivey*, 357 N.C. 114, 118, 579 S.E.2d 251, 255 (2003) (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118-19). We will now analyze the validity of Defendant's speedy trial claim using the four factor test described above.

### 2. Analysis of the *Barker* Factors

#### a. Length of Delay

In determining the length of the delay for speedy trial purposes, the relevant time period begins on the date upon which the indictment is returned. *State v. Goins*, __ N.C. App. __, __, 754 S.E.2d 195, 198 (2014). Thus, the relevant period for purposes of this case began on 8 May 2006 and ended when Defendant's case was called for trial on 25 June 2013. As a

result, the period of delay for purposes of this case is eighty-five months.

## b. Reason for Delay

According to the decisional law governing the resolution of speedy trial issues, the "constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case[.]" *Washington*, 192 N.C. App. at 283, 665 S.E.2d at 804. For that reason, Defendant bears the burden of "offering *prima facie* evidence showing that the delay was caused by the neglect or willfulness of the prosecution[.]" *Id.; see also Goins*, __ N.C. App. at __, 754 S.E.2d at 198. As a result, in the event that the defendant has established that the delay that he or she experienced should be attributed to the State, the State "must . . . offer evidence fully explaining the reasons for delay and sufficient to rebut the *prima facie* evidence." *Washington*, 192 N.C. App. at 283, 665 S.E.2d at 804. We do not believe that Defendant has established that the lengthy delay revealed by the present record stemmed from negligence or willfulness on the part of the State.

As an initial matter, we note that, when a defendant consents to a delay in the course of litigation, he may not claim that he suffered from that delay. *State v. Grooms*, 353

N.C. 50, 63, 540 S.E.2d 713, 722 (2000), *cert. denied*, 534 U.S. 838, 122 S. Ct. 93, 151 L. Ed. 2d 54 (2001). As Defendant concedes, his trial counsel requested a continuance on 22 June 2007 in order to obtain a DNA lab report[2] and sought a second continuance on 18 January 2008 for the same purpose. In addition, Defendant consented to a continuance sought by the State on the same grounds on 20 August 2008. As a result, a considerable portion of the lengthy delay that occurred in this case resulted from actions taken or consented to by Defendant.

The lab report was delivered to counsel for the parties on 21 August 2008. Subsequently, the charges against Defendant were scheduled for trial in October 2009. Although both parties were present and ready for trial, Detective Howard Reaves of the Lumberton Police Department had failed to inform the prosecutor that he was not available due to shoulder surgery. Although the

---

[2]As this Court has previously held, delays resulting from the fact that the State Bureau of Investigation crime laboratory has not completed testing evidence are not attributed to the State for purposes of speedy trial analysis. *State v. Dorton*, 172 N.C. App. 759, 764, 617 S.E.2d 97, 101 (2005), *disc. review denied*, 360 N.C. 69, 623 S.E.2d 775 (2005). Although Defendant vigorously argues that the length of time needed to obtain the relevant laboratory report should be attributed to the State given that some portion of the resulting delay stemmed from a failure on the part of the investigating officers to notify the prosecutor of the existence of the evidence that needed to be tested and the State's failure to make more strenuous efforts to obtain completion of the required testing, he cites no authority in support of this proposition, and we know of none other than *Dorton*, which cuts against Defendant's position.

record does not contain any explanation for the State's failure to have engaged in more effective communications with the Lumberton Police Department, we are unwilling to conclude that the fact that the case against Defendant was not reached in October 2009 because the lead detective had undergone shoulder surgery amounts to neglect or willfulness on the part of the State given that the effect of improved communication would have likely been that Defendant's case was not scheduled for trial at all in October 2009.

Finally, the record reflects that the delay between October 2009 and the date upon which Defendant's case was actually called for trial in June 2013 stemmed from congested trial calendars in the Robeson County Superior Court. At one point, the prosecutor handling Defendant's case was responsible for as many as fifteen homicide cases. As a result of the fact that Defendant had been released on bond in January 2007, it was not unreasonable for the prosecutor to give priority to homicide cases and other cases involving defendants who were in pretrial detention. *State v. Brown*, 282 N.C. 117, 123-24, 191 S.E.2d 659, 664 (1972); *State v. Hughes*, 54 N.C. App. 117, 119, 282 S.E.2d 504, 506 (1981). Although Defendant argues that the State could have taken a number of steps, such as requesting the assignments of additional judges or prosecutors, in order to

relieve the docket congestion that delayed Defendant's trial, a similar argument was not deemed persuasive in *Spivey*. Simply put, the fact that a considerable portion of the lengthy delay at issue here resulted from docket congestion issues in Robeson County indicates that the delay between the date upon which Defendant was formally charged and the date upon which his case was called for trial did not result from neglect or willfulness on the part of the State. *Spivey*, 357 N.C. at 117, 579 S.E.2d at 256. As a result, we are unable to conclude that the lengthy delay at issue in this case should be attributed to the State for speedy trial purposes.[3]

### c. Assertion of Defendant's Right to a Speedy Trial

Although Defendant was formally charged with first degree kidnapping, attempted first degree murder, and assault with a deadly weapon with the intent to kill inflicting serious injury in May 2006, he did not assert his right to a speedy trial until September 2012. In other words, Defendant did not advance any contention in reliance upon his federal and state constitutional right to a speedy trial for six years after he had been formally

---

[3]In addition, Defendant notes that his case was not called for trial at some point during the period from 2009 until 2013 as a result of the fact that Mr. Franklin was out of the country. However, the record contains no indication that Mr. Franklin's absence was caused by the State or that the State had any advance indication that Mr. Franklin would be unavailable on a contemplated trial date.

charged with assaulting, kidnapping, and attempting to murder Mr. Franklin. As the Supreme Court has noted, a "[d]efendant's failure to assert his right to a speedy trial, or his failure to assert his right sooner in the process, does not foreclose his speedy trial claim, but does weigh against his contention[.]" *Grooms*, 353 N.C. at 63, 540 S.E.2d at 722. As a result, Defendant's delay in asserting his right to a speedy trial weighs against him in the ultimate balancing process.

### d. Prejudice to Defendant

In order to obtain relief on speedy trial grounds, a "defendant must show actual, substantial prejudice." *Spivey*, 357 N.C. at 122, 579 S.E.2d at 257; *see also Hughes*, 54 N.C. App. at 120, 282 S.E.2d at 506 (stating that "[c]ourts will not presume that a delay in prosecution has prejudiced the accused."). As we have previously acknowledged, "[t]he right of a speedy trial is designed: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Lee*, 218 N.C. App. 42, 54, 720 S.E.2d 884, 893, *disc. review improvidently allowed*, 366 N.C. 329, 734 S.E.2d 571 (2012) (quoting *State v. Webster*, 337 N.C. 674, 680-81, 447 S.E.2d 349, 352 (1994)).

In his brief, Defendant contends that he made the required showing of prejudice based upon the fact that he suffered "oppressive" pretrial incarceration and experienced anxiety stemming from social stigma arising from his status as a person charged with committing serious criminal offenses who had been released on bond. In addition, Defendant contends that his ability to mount a successful defense was prejudiced by the lengthy delay that occurred in this case given that only one of seven possible alibi witnesses was able to appear at his trial due to illness, death, or disappearance. Having made bond on 27 January 2007, Defendant was out on bail for a substantial portion of the period between the return of the indictments charging him with first degree kidnapping, attempted first degree murder, and assault with a deadly weapon with the intent to kill inflicting serious injury and the date upon which this case was called for trial. In addition, the record contains no evidentiary support for Defendant's claim to have been significantly stigmatized and to have suffered a great deal of anxiety as a result of the substantial period of time during which he was under bond. Finally, Defendant failed to provide any detailed description of the evidence that would have been available from the potential alibi witnesses. In addressing a similar contention to the effect that "potential defense

witnesses who were originally ready and willing to testify . . . became reticent," we held that the defendant's failure to explain the nature of the evidence that he was precluded from presenting or the manner in which the delay between the date upon which the defendant was formally charged and the date upon which his case was called for trial caused his inability to present testimony from these "reticent" witnesses meant that the defendant had failed to show "actual, substantial prejudice." *Goins*, __, N.C. App. at __, 754 S.E.2d at 199. As a result, Defendant has failed to establish the existence of the actual prejudice needed to support an award of appellate relief on speedy trial grounds.

### e. Ultimate Balancing Analysis

After analyzing each of the factors enumerated in *Barker* on an individual basis, we are now required to make the ultimate determination of whether Defendant's federal and state constitutional right to a speedy trial was violated by considering all four factors in conjunction with each other. As an initial step in that process, we note that a one-year trial delay has been held to be "presumptively prejudicial." *Webster*, 337 N.C. at 678, 447 S.E.2d at 351 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2690 n.1, 120 L. Ed. 2d 520, 528 n.1 (1992)). In light of that fact, we find the

eighty-five month delay at issue here exceedingly disturbing. However, our analysis of each of the other *Barker* factors favors the State. Simply put, Defendant failed to assert his right to a speedy trial for six years after having been charged with committing the crimes for which he was convicted in this case. In addition, Defendant either sought or consented to a substantial portion of the delay at issue in this case. Moreover, the record does not support Defendant's contention that the remaining delay resulted from neglect or willfulness on the part of the State as compared to factors over which the State did not have any reasonable degree of control. Finally, Defendant has not demonstrated that he suffered any actual prejudice as the result of the eighty-five month delay at issue here. As a result, consistent with the Supreme Court's holding in *Spivey* to the effect that the defendant was not entitled to relief on speedy trial grounds despite the existence of a four and a half year delay, *Spivey*, 357 N.C. at 123, 579 S.E.2d at 257, we hold that the trial court did not err by refusing to dismiss the charges that had been lodged against Defendant in this case on speedy trial grounds.

## B. Jury Instructions

Secondly, Defendant contends that the trial court erroneously instructed the jury concerning the issue of his

guilt of first degree kidnapping. More specifically, Defendant contends that the trial court erroneously instructed the jury that it could convict Defendant of first degree kidnapping if it found beyond a reasonable doubt that he restrained or confined Mr. Franklin for the purpose of facilitating his commission of or flight after committing assault with a deadly weapon with the intent to kill inflicting serious injury on the grounds that the challenged instruction lacked sufficient evidentiary support. Defendant's contention has merit.

"No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24. Similarly, N.C. Gen. Stat. § 15A-1237(b) provides that a jury verdict "must be unanimous, and must be returned by the jury in open court." Although a defendant's failure to object to an instructional error does, as a general proposition, prohibit the defendant from obtaining appellate review of a challenge to that instructional error under the customary prejudice standard applicable to issues that have been properly preserved for appellate review, *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985), "[w]here, however, the error violates [a] defendant's right to a trial by a jury of twelve, [a] defendant's failure to object is not fatal to his right to raise the question on appeal." *Id.*, 331 S.E.2d at 659; *see also*

*State v. Brewer*, 171 N.C. App. 686, 691, 615 S.E.2d 360, 363 (2005) (stating that "[v]iolations of constitutional rights, such as the right to a unanimous verdict . . . are not waived by the failure to object at trial and may be raised for the first time on appeal") (internal citations omitted), *disc. review denied*, 360 N.C. 484, 632 S.E.2d 493 (2006). Although there is no unanimity violation in the event that the "trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*," *State v. Lyons*, 330 N.C. 298, 303, 412 S.E.2d 308, 312 (1991), the situation is very different in the event that the record does not contain sufficient evidence to support a finding that one or the other of the grounds for finding Defendant guilty of first degree kidnapping listed in the trial court's instructions had adequate evidentiary support.

In *State v. Johnson*, 183 N.C. App. 576, 646 S.E.2d 123 (2007), the trial court instructed the jury that it could find the defendant guilty of second degree kidnapping if it found that he acted either with the purpose of facilitating his commission of breaking or entering, or larceny, or to facilitate his flight after committing those crimes. *Id.* at 581-82, 646 S.E.2d at 127. However, the undisputed record evidence reflected that, when defendant restrained or confined the

victim, he had already committed the crimes of breaking or entering and larceny, *Id.* at 584, 646 S.E.2d at 128, a fact that established that the defendant had not restrained or confined the victim for the purpose of facilitating his commission of a breaking or entering or a larceny. *Id.*, 646 S.E.2d at 128. As a result, given the fact that the record did not contain sufficient evidence to support both of the theories enumerated in the trial court's instructions, we awarded the defendant a new trial. *Id.* at 585, 646 S.E.2d at 128.

The same situation that existed in *Johnson* is present here. As Defendant contends, all of the record evidence tends to show that Defendant feloniously assaulted Mr. Franklin before Defendant removed Mr. Franklin from the Redwood Inn. According to Mr. Franklin:

> [Defendant] just reached down and broke the table leg off, and with the room being in my name, I said, ho, ho, ho. I jumped up, and that's the last thing I remember until I was taken to the river, and he took a rock and busted the window out.

Similarly, Mr. Bass testified that Defendant drove Mr. Franklin's van to the Lumber River, opened the door to display Mr. Franklin "laying out across the seat in the back behind the driver's seat," and told him about beating Mr. Franklin with a table leg at the Redwood Inn. Although the State contends that the assault that Defendant committed against Mr. Franklin had

not ended by the time of this conversation in light of Mr. Bass' testimony that Defendant asked "if [he thought] he should kill [Mr. Franklin] or something," nothing about this evidence tends to show that Defendant assaulted Mr. Franklin at any time after their departure from the Redwood Inn. Similarly, the fact that Mr. Franklin did not remember what occurred beside the Lumber River, that Mr. Franklin's blood was found in the van, and that Defendant broke out the van's window with a rock and caused broken glass to enter Defendant's wounds does not establish that Defendant engaged in any assaultive behavior beside the Lumber River or at any time after Defendant and Mr. Franklin left the Redwood Inn. As a result of the fact that the trial court in this case instructed the jury with respect to the issue of Defendant's guilt of first degree kidnapping on the basis of two theories, "one which [was] not supported by the evidence and one which [was]," and the fact that "it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict," *Johnson*, 183 N.C. App. at 584, 646 S.E.2d at 128, Defendant, like the defendant in *Johnson*, is entitled to a new trial in the case in which he was convicted of first degree kidnapping.[4]

_____

[4]Although the State contends that we should refrain from following *Johnson* on the grounds that it is inconsistent with prior decisions of the Supreme Court, the State has not cited

## III. Conclusion

Thus, for the reasons set forth above, we conclude that, while Defendant's speedy trial claim lacks merit, the trial court erred by allowing the jury to find Defendant guilty of first degree kidnapping on the basis of a disjunctive instruction concerning the purpose for which Defendant acted that lacked adequate evidentiary support. As a result, the trial court's judgments in the cases in which Defendant was convicted of attempted first degree murder and assault with a deadly weapon with the intent to kill inflicting serious injury should, and hereby do, remain undisturbed and Defendant should, and hereby does, receive a new trial in the case in which he was convicted of first degree kidnapping.

NO ERROR IN PART; NEW TRIAL IN PART.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).

---

any decisions limiting *Johnson*'s precedential effect to the specific factual situation at issue in *Johnson* and we have not identified any such decision in the course of our own research. As a result, we conclude that we are bound by *Johnson* despite the State's contention to the contrary.