BERGER, Judge, concurring.
I reluctantly concur in the result reached by this Court as I am compelled to follow the law as it currently exists. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, *557 unless it has been overturned by a higher court." In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). However, it seems that, given the reasoning in recent opinions from our Supreme Court, harmless error analysis should be undertaken.
It is uncontroverted that, in the State's case-in-chief for the driving while impaired charge, there was no evidence presented at trial regarding Defendant's blood alcohol concentration, only evidence concerning an appreciable impairment theory. The trial court conducted a charge conference at the conclusion of all the evidence, and the record shows the court initially intended to instruct only on the appreciable impairment theory. However, the State argued, as shown below, that Defendant's counsel intended to argue in closing that the State had failed to prove Defendant's blood alcohol concentration:
THE COURT: I plan on giving ... 270.20A, impaired driving. I will give the instructions on appreciable impairment as I assume that's the theory that the state is proceeding under.
...
[THE STATE]: Your Honor, I would request the .08 instruction just so I can use it in my argument.
THE COURT: All right.
[ATTORNEY FOR DEFENDANT]: As there was no evidence to sort of an actual number of any blood alcohol level, I would object to that instruction.
THE COURT: Well, if you argue they haven't shown .08 I'm going to give that instruction or they haven't shown his blood alcohol content I will give that instruction because you can't have it both ways. You can't-you can't object to the instruction and argue that they haven't shown his BAC because there are more than one way to prove the offense.
[ATTORNEY FOR DEFENDANT]: Well, my argument about the blood would be more along the *558 line of not talking about any number at any point, just amount. If the blood came back and it was clear of all alcohol, there's no alcohol, there cannot possibly be an alcohol impairment. If there was only a minimal amount, .01 or .02, it couldn't be impairment.
THE COURT: Well, why agree with that because someone could have a .01 and .02 and still be impaired with that particular person. I mean, the only evidence is that there was consumption of alcohol. I mean, I will-
[THE STATE]: Your Honor, I'm almost confident [Attorney for Defendant]'s going to be arguing a portion of the blood test not being done and, you know, I mean, I think that that would allow us to at least have that instruction and then kind of explain why we don't have that in this case, so, I mean, I think it's appropriate to put it in there.
THE COURT: I'll go ahead and give B. Anything further? And I note your objection.
The trial court then instructed the jury consistent with the Pattern Jury Instruction for Driving While Impaired, as follows:
The defendant has been charged with impaired driving. For you to find the defendant guilty of this offense the state must prove three things beyond a reasonable doubt:
First, that the defendant was driving a vehicle.
*732 Second, that the defendant was driving that vehicle upon a highway or street within the state.
And third, that the defendant was driving that vehicle, (1) that the defendant was under the influence of an impairing substance. Alcohol is an impairing substance. The defendant is under the influence of an impairing substance when the defendant has consumed a sufficient quantity of that impairing substance to cause the defendant to lose the normal control of the defendant's *559 bodily or mental faculties or both to such an extent that there is an appreciable impairment of either or both of these faculties, or (2) that the defendant had consumed sufficient alcohol that at any relevant time after driving the defendant had an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath. A relevant time is any time after driving that the driver still has in the driver's body alcohol consumed before or during driving.
If the evidence tends to show that a chemical test known as an Intoxilyzer was offered to the defendant by a law enforcement officer and that the defendant refused to take the test or that the defendant refused to perform a field sobriety test at the request of an officer, you may consider this evidence together with all other evidence in determining whether the defendant was under the influence of an impairing substance at the time that the defendant drove a motor vehicle.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant drove a vehicle on a highway or street in the state and that when doing so the defendant was under the influence of an impairing substance or that the defendant had consumed sufficient alcohol that at any relevant time after driving the defendant had an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of the breath, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
The trial court erred in giving the instructions regarding .08 blood alcohol concentration, where it should have only instructed the jury on appreciable impairment. A disjunctive instruction is erroneous if there is no "evidence to support all of the alternative acts that will satisfy the element." State v. Johnson , 183 N.C.App. 576, 582, 646 S.E.2d 123, 127 (2007). The North Carolina Supreme Court held in State v. Pakulski that:
Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based *560 its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant.
State v. Pakulski , 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987). See also State v. Petersilie , 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993) ("[W]e must assume the jury based its verdict on the theory for which it received an improper instruction." (citations omitted)); State v. Lynch , 327 N.C. 210, 393 S.E.2d 811 (1990) ; State v. Johnson , 183 N.C.App. 576, 646 S.E.2d 123 (2007) ; State v. Hughes , 114 N.C.App. 742, 746, 443 S.E.2d 76, 79 (1994) ("We are required, we believe, to order a new trial...."), disc. review denied , 337 N.C. 697, 448 S.E.2d 536 (1994) ; State v. Dick , --- N.C.App. ----, 791 S.E.2d 873 (2016) (unpublished); State v. Malachi , --- N.C.App. ----, 799 S.E.2d 645, COA16-752, 2017 WL 1381592 (2017). These cases set forth a per se plain error rule requiring a new trial when a disjunctive instruction is given and there is no evidence to support each of the theories submitted to the jury.
However, the North Carolina Supreme Court appears to be shifting away from this per se plain error rule for disjunctive jury instructions. In State v. Lawrence , 365 N.C. 506, 723 S.E.2d 326 (2012), that Court reaffirmed and clarified that "the plain error standard of review applies on appeal to unpreserved instructional" errors in the context of jury instructions. Lawrence , at 518, 723 S.E.2d at 334. The Supreme Court also noted that N.C. Gen. Stat. § 15A-1443 differentiated the harmless error standard of review, which applies only to preserved errors.
*733 [H]armless error review functions the same way in both federal and state courts: Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.... [A]n error ... [is] harmless if the jury verdict would have been the same absent the error. Under both the federal and state harmless error standards, the government bears the burden of showing that no prejudice resulted from the challenged federal constitutional error. But if the error relates to a right not arising under the United States Constitution, North Carolina harmless error review requires the defendant to bear the burden of showing prejudice. In such cases the defendant must show a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.
*561 Lawrence , at 513, 723 S.E.2d at 331 (internal citations, quotation marks, and brackets omitted).
In State v. Boyd , 366 N.C. 548, 742 S.E.2d 798 (2013), our Supreme Court, after directing this Court to follow the analysis in Lawrence , adopted a dissent from the Court of Appeals which applied plain error review to an unpreserved error concerning a jury instruction for which there was no evidence. See State v. Boyd , 222 N.C.App. 160, 730 S.E.2d 193 (2012) (Stroud, J., dissenting), dissent adopted by 366 N.C. 548, 742 S.E.2d 798 (2013).
More recently, the Supreme Court remanded to this Court the case of State v. Martinez , in which the trial court erred when it instructed the jury in a sexual offense case on a theory not supported by the evidence offered at trial. State v. Martinez , --- N.C.App. ----, 795 S.E.2d 433 (2016) (unpublished), writ dismissed , --- N.C. ----, 797 S.E.2d 5 (2017). Initially, this Court held that "there was an ambiguity as to which sexual act the jury found Defendant had committed, and therefore [we] 'must resolve this ambiguity in favor of Defendant.' " Id . at ---- (quoting State v. Pakulski , 319 N.C. at 574, 356 S.E.2d at 326 ) (brackets omitted). Our Supreme Court remanded the case, directing us to determine whether or not the trial court's instructions in that matter amounted to plain error as set forth in Boyd .
However, in the case sub judice , the error under review was preserved, as Defendant's counsel objected to the instruction. For preserved error, harmless error analysis should be applied pursuant to the plain language of N.C. Gen. Stat. § 15A-1443 and as discussed in Lawrence . But, this is not the current state of the law. Even so, the majority engages in a harmless error analysis when it states, "this is not a case where there is overwhelming evidence of Defendant's impaired driving" and then discusses the facts it believes supports that conclusion.
Were we to engage in a harmless error analysis, which under current case law we cannot do, I believe a different conclusion would be required. The evidence in the record tended to show that Defendant drove his truck into the path of Officer Monroe's motorcycle. In order to avoid a collision with Defendant's vehicle, Officer Monroe was forced to "lock the bike up and then immediately make an evasive maneuver" and abruptly shift lanes. Officer Monroe initiated a traffic stop, and observed that Defendant had red, glassy eyes, spoke with slurred speech, and had a medium odor of alcohol on his breath. When asked why he pulled out into the path of the officer's motorcycle, Defendant said the officer had enough room and that he "was catching [the officer's]
*562 curiosity." Officer Monroe then asked Defendant if he had consumed any alcohol prior to driving that evening, and Defendant responded that "he had one to two drinks" of Jägermeister. Defendant was asked to exit the vehicle to perform field sobriety tests.
Defendant was visibly swaying and unable to keep his balance while the officer was providing instructions for the walk-and-turn test. Defendant also began the test before being instructed to do so on two occasions. At this point, Defendant told Officer Monroe "that he can't do the test, he's not going to do the test."
Officer Monroe then attempted to have Defendant perform the one-legged stand test. Defendant again was visibly swaying and unable to perform the test as instructed. When Officer Monroe offered to demonstrate *734 the test again, Defendant indicated he did not want to perform the test.
After he was arrested for driving while impaired, Defendant was taken to the Raleigh Police Department. There, Officer Monroe attempted to administer a blood alcohol test on the ECIR-2 ("Intoxilyzer"). Defendant took a breath and blew into the instrument to provide a sample. Defendant was performing this test as instructed, but then he stopped and indicated he was not going to continue with the test. Defendant's failure to complete the Intoxilyzer test resulted in a refusal. No blood test was performed, and no numerical value was ever obtained for Defendant's blood alcohol concentration for this incident.
It was this evidence upon which the jury deliberated and convicted Defendant. The jury heard no evidence regarding a numerical finding of Defendant's blood alcohol concentration, yet we are required to assume the jury's verdict was based upon a finding that Defendant's blood alcohol concentration was .08 or higher. See State v. Petersilie, 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993) (citation omitted) ("[W]e must assume the jury based its verdict on the theory for which it received an improper instruction." (citations omitted)).
Jurors are instructed prior to every trial that they should "use the same good judgment and common sense that you use[ ] in handling your own affairs...." N.C.P.I.-Crim. 100.21 (2015). In reviewing the entire record in this case, one could reasonably conclude that, because there was no evidence of impaired driving under N.C. Gen. Stat. § 20-138.1(a)(2), the jurors did as they were instructed: they used their "good judgment and common sense," and relied upon the appreciable impairment theory.
*563 Concluding the harmless error analysis, it cannot be said that a different result would have been reached in this case had the error in question not been committed. Defendant failed to establish that there was a reasonable possibility that the .08 instruction contributed to his conviction given the evidence of appreciable impairment. I would find the erroneous instruction harmless beyond a reasonable doubt.
While this may be the analysis the North Carolina Supreme Court would prefer us to utilize given the plain language of N.C. Gen. Stat. § 15A-1443 and a broader reading of Lawrence , Boyd , and Martinez , this Court must apply the law as it is. If the North Carolina Supreme Court is, in fact, changing the standard of review we are to apply to disjunctive instructions given in error, straightforward direction from that higher court would be beneficial.